## Williams v. Letton.

(Decided March 5, 1929.)

ALLAN D. COLE for appellant.

DENIS DUNDON for appellee.

Opinion of the Court by Judge Clay—Affirming.

Henry Williams, who died intestate a resident of Bourbon county, was the owner of ten $100 postal savings certificates. Lily Letton claimed the certificates as a gift. Being in doubt as to whether the gift was effective, Williams' administrator brought this suit against Lily Letton and the heirs of Williams to have the question adjudicated. The chancellor sustained the gift, and A. W. Williams, one of the heirs, has appealed.

The principal witness for appellee was James B. Wilson, a nephew of the decedent. Briefly stated, his evidence is as follows: Just a few weeks before his death, his uncle came to see him, and said that he did not believe that he would live very long. During the conversation he asked what a first-class burial would cost. He told his uncle that it would cost from $400 to $500. His uncle then told him what he desired in this respect. After some further instructions along the same subject, he jokingly said to his uncle: "Uncle Henry, if you are thinking so seriously of dying, whom do you consider your best friend?" His uncle said: "Lily Letton, formerly of Bethel, Kentucky. I consider her my best friend. If I have anything to give away I am going to give it to her." His uncle further stated that it would be given to her because she had helped him when he was sick in bed and without funds some 15 or 20 years before that time. At his uncle's request, he gave his uncle his phone number so that he could be reached in case he was needed. On receiving a call from Dan Jordan, his uncle's friend, he came to Paris, consulted Dr. Brown, and they concluded to send his uncle to the hospital. On the day he was sent to the hospital, his uncle gave him a small packet tied with colored tissue paper. He put the packet in his coat pocket. After that he went to see his uncle regularly every two or three days. After his uncle had been at the hospital about ten days, his uncle asked him to stop at Dr. Brown's and inquire as to his general condition. He went to see Dr. Brown, who told him that he would not live three weeks. On his next visit to the hospital his uncle asked him what the doctor had said. Not wishing to tell his uncle what the doctor had actually said, he hesitated, and then told him that the doctor said he would probably have to remain there for about three weeks. His uncle looked up at him and smiled, and said: "I understand. The package you have in your pocket is for

Lily Letton. Give it to her." He then asked if he should write her a letter to come to Paris immediately. His uncle said, "No, don't worry her with my troubles." His uncle then told him that Dan Jordan had sufficient funds to pay all his expenses. The package contained 10 postal savings certificates. There was other evidence to the effect that decedent often expressed his gratitude to Lily Letton, and even went so far as to tell the lady with whom he boarded that if he ran out of funds Lily would pay his board. It also developed that he had given Dan Jordan sufficient money to pay his board, and his burial expenses.

There is no escape from the conclusion that all the requisites essential to a valid gift causa mortis were present in this case: (1) The gift was made in view of the donor's impending death, and the donor died of the disorder or peril within a few days. This is shown not only by his manner and conversation, but by the fact that he gave a large sum of money to his friend to pay his expenses during his last days, and provide for his burial. (2) The donor was competent. Though of advanced years, he prepared for the end in a sensible way, and there is nothing in the record even remotely suggestive that he was of unsound mind or the victim of undue influence. (3) There was a clear intention to make a present gift. The donor's language was: "The packet you have in your pocket is for Lily Letton. Give it to her." (4) The donor's intention was executed by the delivery of the certificates to his nephew for the donee. Where this is done, it will be presumed unless the contrary appears, that the person to whom the delivery was made takes as the trustee of the donee. Weber v. Salisbury, 149 Ky. 327, 148 S. W. 34. Not only so, but where the delivery is made to a third person as trustee for the donee, the gift causa mortis takes effect although the gift does not come to the knowledge of the donee, and is not accepted by him, until after the donor's death. Weber v. Salisbury supra; Varley v. Sims, 100 Minn. 331, 111 N. W. 269, 8 L. R. A. (N. S.) 828, 117 Am. St. Rep. 694, 10 Ann. Cas. 473.

Under the modern rule, any chose in action which creates a liability against a third person, and which is held by the donor and is his property, either legal or equitable, is the subject of a valid gift causa mortis by mere delivery (28 C. J. 699; Stephenson's Adm'r v. King, 81

Ky. 425, 50 Am. Rep. 173; Broaddus' Ex'r v. Broaddus, 27 S. W. 989, 16 Ky. Law Rep. 330), and we perceive no reason why the rule does not apply to postal savings certificates.

It follows that the chancellor did not err in holding the gift valid.

Judgment affirmed.