Dietzen *v.* American Trust & Banking Co.

(*Knoxville*, September Term, 1938.)

Opinion filed July 1, 1939.

WILLIAMS & WILLIAMS, of Chattanooga, for complainant.

CANTRELL, MEACHAM & MOON, of Chattanooga, for defendant.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

The question presented for determination is whether or not complainant acquired valid title to certain United States Savings Bonds, having an accrued value of $1,500, and certain United States Postal Savings Certificates,

having a face value of $2,500, by virtue of a gift made to him by his mother, Mrs. Rosa Dietzen.

It is contended for defendant that the bonds and certificates were not endorsed and, in fact, are nontransferable and nonnegotiable and no title could pass by delivery.

The chancellor granted complainant a decree for the total amount of the bonds and certificates. On defendant's appeal, the Court of Appeals affirmed the decree of the chancellor as to the bonds, but reversed the decree as to the certificates upon the ground that they were not transferable by delivery and, consequently, valid title thereto did not pass to complainant.

The parties have filed their respective petitions for *certiorari* to this court, which have heretofore been granted and argument heard.

The material facts are, in substance, that Mrs. Rosa Dietzen, mother of complainant, eighty years of age, became seriously ill on September 15, 1937, and a few days prior to her death on October 4th of that year, gave him $500 in cash and two United States postal bonds and certain United States savings certificates; that the money and certificates were in her safety deposit box in the bank with which she did business; that she gave him the key to her box with directions to go to the bank and remove the above-mentioned securities and money, which he did, upon a written order signed by his mother, taking possession of the money and securities, and he deposited the money in the bank in his own name, but having no safe place to keep the bonds and certificates he replaced them in his mother's safety deposit box with other property belonging to her, retaining the key to the box in his own possession, and the securities remained there until after the death of the mother, which occurred a few

days later. Upon the demand of the administrator he turned over to him the key, accompanied with a letter setting forth his claim to the securities. It further appears that complainant had lived on a farm with his mother for some eighteen years, and was practically an invalid; that in her last illness, Mrs. Dietzen was worried about John (complainant) not having money enough to look after the finances of the farm, and she said to Mr. W. H. DeWitt, a banker and her confidential financial adviser, that she had given the money and these securities to John because she wanted him to have them as she knew he could not produce on the farm. She asked Mr. DeWitt's advice as to how she could give the money and these securities which were in the lockbox to John, and he advised her that she would have to have a written order to the bank directing it to turn over the box to John with its contents, and would have to give John the key in order that he could open the box. Mr. DeWitt dictated the necessary order and, at the request of Mrs. Dietzen, he accompanied John to the bank and was present when the box was opened and the money and the specified bonds and certificates were removed therefrom, and he testified to the circumstances under which the bonds and certificates were replaced in the box. The box contained no other money or securities.

The chancellor and the Court of Appeals concurred in finding the facts substantially as above set forth.

██ We think the gift of the money and securities by Mrs. Dietzen to complainant was made *causa mortis,* as held by the Court of Appeals. The chancellor did not hold otherwise, but merely found that a valid gift had been made without characterizing it as *inter vivos* or *causa mortis.* Mrs. Dietzen undoubtedly had the intention to make the gift and she did all that it was possible

for her to do in the circumstances in the matter of delivery. She delivered the key to her lockbox to complainant for the purpose of enabling him to get into the box and take possession of the subject matter of the gift. What more could she have done to effect a delivery in her condition of physical incapacity and sickness? In *Scott* v. *Bank & Trust Co.*, 123 Tenn., 258, 283, 284, 130 S. W., 757, 764, the court said, "when it is once ascertained that it is the intention of the donor to make such a gift, and all is done which is possible under the circumstances in the matter of delivery, the gift will be sustained."

Not only did the intention to make the gift and effect delivery of the securities in question exist on the part of Mrs. Dietzen, but delivery was actually made when complainant, the donee, went to the bank and obtained the box on the written order of Mrs. Dietzen, opened it with the key she had turned over to him, and removed therefrom the subject matter of the gift. That this constituted a complete delivery cannot be successfully denied. His act in placing the securities back in the box, because he had no safe place to keep them, retaining the key in his possession, did not amount to a redelivery to his mother. He had no intention to redeliver and access to the contents of the box could not be had without the key, which he retained. The fact of the gift is established by clear and satisfactory proof.

In case of gifts *causa mortis,* as in case of gifts *inter vivos,* delivery is not only essential, but by this act of parting with possession the donor should also part with all dominion over it. *Chandler* v. *Roddy*, 163 Tenn., 338, 43 S. W. (2d), 397; *Wilson* v. *Wilson*, 151 Tenn., 486, 267 S. W., 364; *Scott* v. *Bank & Trust Co., supra; Marshall* v. *Russell*, 93 Tenn., 261, 25 S. W., 1070; *McEwen* v. *Troost*, 33 Tenn. (1 Sneed), 186.

■ A *donatio causa mortis* differs from a gift *inter vivos* because it is ambulatory and revocable during the donor's life. *Sheegog* v. *Perkins,* 63 Tenn. (4 Baxt.), 273, 280. It must be made in the conceived approach of death; not a general apprehension of death from the mortality of man, but an apprehension arising from the peculiar sickness, peril, or danger. *Gass* v. *Simpson,* 44 Tenn. (4 Cold.), 288. "If made in the last sickness of the donor, or while languishing on his deathbed, it will be presumed to have been done in contemplation of death." *Sheegog* v. *Perkins, supra.* In such case, says Mr. Pomeroy in his work on Equity Jurisprudence, vol. 3, p. 2654, "it will be presumed to be a donation *causa mortis,* although the donor does not, in express terms, declare it to be such." In the instant cause, the donor, stricken with a serious illness, while lying on what proved to be her deathbed, though showing some improvement at the time, made the gift to her physically disabled son about whose financial condition she was concerned. Under the circumstances shown, it may be inferred that the gift was made in contemplation of impending death.

■■ Bonds and certificates of deposit are the subject matter of a valid gift *causa mortis.* Pomeroy's Eq. Jur., vol. 3, sec. 1148; 28 C. J., 645. With respect to the latter, the court in *Basket* v. *Hassell,* 107 U. S., 602, 2 S. Ct., 415, 422, 27 L. Ed., 500, said:

"That a delivery of a certificate of deposit, such as that described in the record in this case, might constitute a valid *donatio mortis causa,* does not admit of doubt. [Citing authorities.] A certificate of deposit is a subsisting chose in action and represents the fund it describes, as in cases of notes, bonds, and other securities,

so that a delivery of it, as a gift, constitutes an equitable assignment of the money for which it calls."

We think that under the great weight of authority both United States postal bonds and United States savings certificates are proper subject matter of a gift *causa mortis*, and that such a transfer is valid unless prohibited by Federal statute or authorized regulation.

■ A Federal statute compiled in 31 U. S. C. A., sec. 757c, provides as follows:

"(a) The Secretary of the Treasury, with the approval of the President, is authorized to issue, from time to time, through the Postal Service or otherwise, bonds of the United States to be known as 'United States Savings Bonds.' . . . The various issues and series of the Savings Bonds shall be in such forms . . . and shall be issued in such manner and subject to such terms and conditions consistent with subsections (b) and (c) hereof, and including any restriction on their transfer, as the Secretary of the Treasury may from time to time prescribe."

The Court of Appeals found that the Secretary of the Treasury under date of December 16, 1936, issued a Department Circular under the title "Regulations Governing United States Savings Bonds," section 2 being as follows:

"(II) Limitation of Transfer

"1. United States Savings Bonds are not transferable and are payable only to the owner named thereon except in the case of disability or death of the owner or as the result of judicial proceedings or as otherwise specifically provided herein, but in any event only in accordance with the provisions hereof."

We think the exception contained in the above limitation of transfer is broad enough to admit a gift *causa*

*mortis.* Especially is this true when such gift is established by judicial proceedings.

Postal savings certificates are authorized by statute compiled in 39 U. S. C. A., sec. 751 et seq. Section 768 provides:

"The Postmaster General . . . shall also from time to time make rules and regulations with respect to the deposits in and withdrawals of moneys from postal savings depositories and the issue of pass books or such other devices as he may adopt as evidence of such deposits or withdrawals."

The Court of Appeals found that the United States Postal Guide, section 7, page 116, contains the regulation that "postal savings certificates are not transferable nor negotiable," and that the regulation further provides for payment to the holder if he be alive, and if dead to his administrator, if the laws of the State of his residence require the appointment of an administrator. From this regulation, the Court of Appeals concluded that postal savings certificates are not the subject of a gift *causa mortis* and title would not pass by delivery.

We are unable to agree with the holding of the Court of Appeals on this point. While *donatio causa mortis* is not testamentary in character, nevertheless it bears some resemblance thereto in that it is a disposition of property in contemplation of death. We think that under a fair interpretation of the regulation there is nothing therein inconsistent with the view that savings certificates are transferable by will. By analogy, therefore, we take the view that transfer by gift *causa mortis* is permissible thereunder.

Our conclusion is that no Federal statute or regulation prohibited the transfer by gift *causa mortis* of the bonds and certificates here involved. The Federal Gov-

ernment is not a party to this litigation and, hence, is not bound by the decree herein; but, as between complainant and defendant, we hold that the securities became the property of complainant and the decree of the chancellor is affirmed and that of the Court of Appeals is reversed in so far as the postal savings certificates are concerned.