## Moore's Adm'r v. Marshall.

May 24, 1946.

Rehearing denied October 11, 1946.

730

R. L. Pope and C. D. Bell for appellant.

Astor Hogg and John Carter for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

This appeal presents the novel question: Are United States Savings Bonds, Series D, transferable by gift inter vivos?

H. C. Moore died November 15, 1944, a resident of Harlan county, Kentucky. C. V. Owens qualified as administrator of Moore's estate, and on April 4, 1945, brought an action against Helen Marshall to recover possession of six $1,000 United States Savings Bonds which he alleged belonged to the estate of the decedent. In her answer the defendant admitted that the bonds were in her possession, but denied that she was wrongfully detaining them, and alleged that H. C. Moore, prior to his death, made an unqualified gift to her of the bonds and that she was the owner thereof. In his reply the plaintiff denied that his decedent had made gift of the bonds to the defendant, and in an amended reply alleged that they were nontransferable and were not such property as could be assigned, transferred or given away. On the trial the court submitted the case to the jury on the issue as to whether there had been a gift. The jury returned a verdict for the defendant, and plaintiff has appealed.

One of the grounds urged for reversal of the judgment is that the evidence failed to establish a gift inter vivos and was insufficient to take the case to the jury on that issue, but it is unnecessary to consider this ground in view of our conclusion that the bonds in question were not transferable by gift and that appellant's motion for a peremptory instruction to find for him should have been sustained.

The bonds in question are six United States Savings Bonds authorized by the Second Liberty Bond Act, approved September 24, 1917, 40 Stat. 288, and issued pur-

suant to Treasury Department Circular No. 596, dated December 15, 1938. They were purchased by H. C. Moore in March, 1940, were dated March 1, 1940, and mature ten years from issue date. The issue price of each bond is $750, and the maturity value is $1,000. On the face of each bond this appears:

"This bond is not transferable; and except as provided under said circular (Treasury Department Circular No. 596), it is payable, at maturity or on earlier redemption, only to the registered owner and upon the presentation and surrender of this bond with the request for payment duly executed on the back hereof, all in accordance with the provisions of said circular and the regulations prescribed from time to time thereunder."

Under the heading "Instructions to Owners" this appears:

"The request for payment must be signed in ink or indelible pencil by the registered owner in whose name the bond is inscribed or by such other person as may be entitled to payment under the regulations of the Treasury Department."

Paragraph 4 of Treasury Department Circular No. 596, dated December 15, 1938, reads:

"The savings bonds will not be transferable, and will be payable only to the owner named thereon, except in case of death or disability of the owner or as otherwise specifically provided in regulations prescribed from time to time by the Secretary of the Treasury (see paragraph 14), and in any event only in accordance with such regulations. Accordingly they may not be sold and may not be hypothecated as collateral for a loan. Savings bonds shall be valid only if inscribed with the owner's name and address, dated the first day of the month in which the issue price (or the application accompanied by remittance to cover the issue price) is received, and duly delivered by an authorized postmaster or other issuing agent; if issued by a postmaster they will bear the post-office dating (money-order) stamp, and if issued by another agent they will bear the dating stamp of the agent."

The pertinent part of Paragraph 5 of the same Circular reads:

"Each of the bonds issued hereunder will be entitled to such exemption from taxation as may be authorized by the law in effect on its issue date. Under the law in effect on the date of this circular (December 15, 1938) the bonds are exempt, both as to principal and interest, from all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States or by any local taxing authority, except (a) estate or inheritance taxes, or gift taxes * * *."

We have not been referred to any decisions of a court of last resort, and we have found none in which the court considered the precise question prsented by this appeal; namely, whether bonds of this type may be transferred by gift inter vivos. There are cases in which the courts have held that Postal Savings Certificates and other government obligations marked nontransferable may be the subject of a valid gift causa mortis. The appellee relies strongly on Dietzen v. American Trust & Banking Co., 175 Tenn. 49, 131 S. W. 2d 69, 72, where the court concluded that no Federal statute or regulation placed any prohibition upon the transfer by gift causa mortis of certain United States Savings Bonds and United States Postal Savings Certificates. The court pointed out the distinction between gifts causa mortis and gifts inter vivos, and based its decision on the ground that no Federal statute or regulation prohibited the transfer by gift causa mortis of the bonds and certificates there involved. In the course of the opinion, the court said:

"While donatio causa mortis is not testamentary in character, nevertheless it bears some resemblance thereto in that it is a disposition of property in contemplation of death. We think that under a fair interpretation of the regulation there is nothing therein inconsistent with the view that savings certificates are transferable by will. By analogy, therefore, we take the view that transfer by gift causa mortis is permissible thereunder."

In Williams v. Letton, 228 Ky. 371, 15 S. W. 2d 296, it was held that Postal Savings Certificates were subject of a valid gift causa mortis, but it does not appear that any question was raised as to the effect of a restriction, if any, on the transferability of the certificates. Section 22 of the Second Liberty Bond Act, 31 U. S. C. A. sec. 757c, authorizes the Secretary of the Treasury to issue

United States Savings Bonds which shall be subject to restrictions on their transfer as he may from time to time prescribe. Pursuant to this authority, the Secretary has adopted regulations governing the registration of the bonds and providing that they are nontransferable. It has been held that these regulations are within the authority conferred upon the Secretary of the Treasury by Congress, and that they have the force and effect of law. United States v. Sacks, 257 U. S. 37, 42 S. Ct. 38, 66 L. Ed. 118; United States v. Janowitz, 257 U. S. 42, 42 S. Ct. 40, 66 L. Ed. 120; Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; Harvey v. Rackliffe, 141 Me. 169, 41 A. 2d 455; In re Murray's Estate, Iowa, 20 N. W. 2d 49; Ervin v. Conn, 225 N. C. 267, 34 S. E. 2d 402.

In Warren v. United States, 68 Ct. Cl. 634, certiorari denied 281 U. S. 739, 50 S. Ct. 346, 74 L. Ed. 1154, the executrix of the registered owner of War Savings Certificates sought to collect the proceeds of the certificates. Certain persons were named in the certificates as beneficiaries upon the death of the registered owner. The court held that the case was simply one of contract between the decedent and the United States; that the Act of Congress authorizing the issuance of the certificates, and the regulations of the Treasury pursuant thereto, were part of the contract; and that the regulations had the force and effect of law and were to be read into the contract beween the parties.

In the case of In re Owens' Estate, 177 Misc. 1006, 32 N. Y. S. 2d 747, 749, it was held that a United States Savings Bond can never be made the subject of a voluntary transfer by way of gift or sale or pledge. In the opinion it was said:

"The public policy surrounding the issuance and retention of these securities is clearly revealed in the form and regulations originally made, and in the amendments subsequently issued. Unlike other governmental bonds, interest upon them is not currently paid, but accumulates until the date of maturity or an earlier authorized date of payment. They are thus of a character and purpose which might be described as thrift or savings securities. The purpose of the government to restrict ownership and to prohibit transfer is, therefore, clear."

In the case of In re Estate of Wallace, 266 Ill. App. 500, the owner of ten United States Treasury Savings Certificates attempted to make a gift inter vivos of the certificates to his wife. In holding that the certificates were not transferable by gift, the court said:

"The nontransferability of the certificates was a protection and a security for both the government and the registered owner thereof, and this court has no power to waive this benefit on behalf of the government. We must, therefore, necessarily hold that George F. Wallace could not transfer the ownership of said certificates by gift thereof, and that Mrs. Wallace is not entitled to the proceeds thereof, her title to said certificates being dependent upon her ownership thereof. The obligation of the government to pay the amounts of the certificates being limited to paying George F. Wallace, no title to the certificates, or right to proceeds thereof, passed by a manual delivery of the certificates with the intent to make a gift of the certificates, or the amounts."

To the same effect is Saper v. Sussman, 185 Misc. 277, 56 N. Y. S. 2d 377.

The Act of Congress and the Treasury regulations had two objectives: (1) To obtain money for the United States Government; and (2) to encourage thrift and savings by small investors. The nontransferability feature was intended to accomplish the second objective, and for that reason the limitation on transfer was made all inclusive. That the limitation was intended to include transfers by gift is suggested by the regulation relative to creditors' rights and judicial proceedings which provides:

"A Savings Bond will be paid to, but not reissued in the name of, the person found entitled thereto through judicial proceedings, upon presentation and surrender of the bond: Provided, however, That no such proceedings will be recognized if they would give effect to an attempted voluntary transfer of the bond or would defeat or impair the rights of survivorship conferred by the regulations in this part upon co-owners and beneficiaries." Code of Federal Regulations, 1940 Supl. Title 31, sec. 315.17.

A holding that these United States Savings Bonds are transferable by gift inter vivos would defeat the

purposes of the Act of Congress and the Treasury regulations, and would open the door for evasion of plainly expressed restrictions on transfer. Each of these bonds, together with the Act and Treasury regulations, constitute a valid and binding contract determining the rights of the parties therein, and the regulations have the force and effect of law and are to be read into the contract between the purchaser of the bonds and the United States Government. Some point is made of the reference to gift taxes in the regulations, but this evidently was to cover a case where the purchaser of the bonds has them registered in the name of another and delivers them to such person. If the decedent in this case had desired that appellee should receive the proceeds of the bonds, he could have had them reissued as either co-ownership or beneficiary bonds, or he could have cashed the bonds and with the proceeds purchased others in the name of Helen Marshall.

As heretofore stated, the regulations of the Treasury Department are part of the provisions of the bonds before us. These regulations provide that United States Savings Bonds will be issued only in registered form and the name of the owner must be stated. They limit the ownership that may be contracted for, and require that the actual ownership be expressed. They prohibit the transfer of the bonds, and provide for payment only to the persons named therein. It is our view that the bonds in question are controlled by Section 22 of the Second Liberty Bond Act and the regulations of the Treasury Department made pursuant thereto; that these regulations prohibit the transfer of the bonds by gift inter vivos; that H. C. Moore was the owner thereof at the time of his death; and that his administrator is entitled to their delivery by the terms of their registration.

The judgment is reversed, for proceedings consistent herewith.