## Bunch v. Hulsey.

June 14, 1946.

Rehearing denied October 8, 1946.

764

Zeb A. Stewart for appellant.

Elmer Brown for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This action is between a mother and daughter. The daughter, Delma Hulsey, appellee herein, brought habeas corpus proceedings against her mother, Ola Mae Bunch, appellant herein, alleging that the defendant mother now restrains plaintiff's infant child, Shirley Ann Henry, of her liberty, and deprives the petitioner of the possession of the child by forcible confinement in the home of the defendant, unlawfully and without right, to which possession the petitioner is lawfully entitled.

Upon a hearing of the cause the court sustained the petition for the writ of habeas corpus; granted the prayer of plaintiff's petition, and further adjudged that "by consent of the plaintiff, the defendant is to have possession of the said child, Shirley Ann Henry, Monday through Friday, inclusive, of each week, and the plaintiff is to have possession of the child on Saturday of each week, and the child is to be returned to the defendant on Sunday morning of each week for the purpose of attending Sunday School and every second Sunday afternoon of each month, the plaintiff is to have possession of the child. This is to continue during the school term, and during the vacation term of school, then the plaintiff and defendant should have posession of the child alternately for six weeks each, until the beginning of the school term, and then possession of the child is to revert to the time as directed herein."

The grandmother prosecutes this appeal.

Counsel for appellant takes the position that the judgment of the court below is violently contrary to all established principles concerning the welfare and wishes of an involved infant child, and is without precedence in the jurisprudence of this Commonwealth.

This is another of those unfortunate cases where we

must assume the more or less painful responsibility of determining whether or not a parent or grandparent shall have the custody of a child. In our determination of this matter we shall carefully avoid including in our opinion many of the unpleasant facts alleged in the answer and response, and introduced as evidence in the case.

The appellee mother was first married to William Henry. After about two weeks, William Henry abandoned his wife, who was then barely 16 years of age. This young wife continued living with her mother, in whose home the child, Shirley Ann, was born on May 19, 1938.

The grandmother contends that her daughter told her that "I don't know anything about a baby and I can't take care of it myself and I want you to take care of it." This her daughter denies but the evidence is uncontradicted that soon after the child was born, the daughter worked at domestic work for sometime and assisted in every way she could to help care for the child, and during all the time, up until about seven months before her second marriage, she and her child continued to live in appellant's home. For about 4 years of that time appellee worked at the Ken-Rad plant in Owensboro and made material contributions out of her wages toward the upkeep of her mother's home and the care of her infant child.

It appears that an action for divorce had been brought against William Henry but was continued due to the war, during which time she and the child drew an allotment from him. It also appears that during the time she was working she made an allotment out of her pay for the purchase of bonds and thereby had taken out nineteen $25 bonds made payable to her and upon death to her mother. After the close of the war she finally obtained a divorce from William Henry, the judgment therein granting her the care and custody of Shirley Ann. On February 12, 1946, she married Frank Hulsey. After her second marriage she undertook to get possession of Shirley Ann, who was yet living with her grandmother. The grandmother refused to let her have the child.

The record discloses that the plaintiff proposed to her mother that the grandmother keep the child with her

from Monday until Friday during school terms, and let the child stay with her mother over Saturday and Sunday, and that during the school vacation period they alternate the possession of the child in equal periods of time. This the grandmother refused to do. Whereupon, this action was brought.

It will be noted in the evidence that the court questioned both the mother and grandmother relative to this proposal, and the plaintiff below consented and agreed to such division of time in the possession of the child. The grandmother was adamant in her refusal so to do. The appellant mother, both in her answer and response, took an attitude that is difficult to understand. A mother's love for her son or daughter as an undying something, continuing through the years, in the face of any trouble or difficulty, has been the subject of verse, story, and song through the centuries. How a mother could get the consent of her mind to introduce into a permanent record the immorality alleged herein is difficult to conceive. The daughter quite frankly admitted the mistakes she had made—the first while a girl only 15 years of age, and while yet under the direct control of, and custody of, the appellant here.

This record discloses that the second husband is able and willing properly to provide for and maintain this child, and joins with his wife in her efforts to secure the possession of this child. He had already joined with his wife in a legitimate endeavor to correct the second mistake alleged herein, and there is nothing in this record to show that the child would not be properly cared for during the period of time that it is in their home.

Counsel for appellant in his argument places much emphasis upon the testimony of the child, who is approximately 8 years of age, and insists that the wishes and desires of the child are the all controlling matters herein. He cites a long line of decisions in support of his position, with all of which we are thoroughly familiar. However, it will be noted in most, if not all of those cases, the child is much older than in the instant case. Then it will be further noted that in the evidence here, while the child was rather positive in the expression of its desires, yet it is apparent that it was expressing what it had been told to express. Our conclusion herein is not in conflict with those opinions.

It will be further noted that there had' been no abandonment on the part of the mother; no entire withdrawal from, or continued absence from, the child. This mother had been with this child, as far as this record discloses, practically every day, or night, exclusive of seven months prior to her second marriage, and obviously, in no way surrendered possession or custody of the child to its grandparent.

The grandmother further insists that this is an attempt on the part of the appellee's husband, Frank Hulsey, to obtain possession of certain bonds or money being held for the child. The appellant further refused to surrender to her daughter these 19 bonds, above mentioned, and insists that her daughter gave them to her. The daughter denies this and says that she left them in a chest in her mother's home and when she returned for them they had been moved. It will be unnecessary to discuss this matter other than to say that in a recent decision, this Court has held that such character of bonds are not subject to gift inter vivos. See Moore's Adm'r v. Marshall, 302 Ky. 729, 196, S. W. 2d 369.

We think that the proposal made by the daughter to the mother was more than fair. Even in extreme cases involving the custody of a child between father and mother, this Court has never forbidden visitation by either parent. The consented division of time on the part of the mother of this child is very little more than a privilege of visitation. It would be natural to conclude that the duty of caring for and training the child, with its attendant responsibilities, would have its stabilizing effect upon this young mother. That this would be the result, at least, should be the hope of this grandmother.

We cannot fail to be impressed with the sincere attempt on the part of the trial court to ascertain the justice and fairness in this matter, with proper consideration given to the welfare and best interest of the child. He made a thorough investigation of the willingness of the child's mother for a division of time as to the possession of the child. He was in a position to observe the attitude, temperament, and demeanor of the parties to this litigation, and witnesses for each. He was close to the situation. There is no apparent reason why we should disturb the trial court's findings. See Smith v. Boone, 222 Ky. 1, 299 S. W. 1059.

We believe the court properly sustained the petition for writ of habeas corpus, and in view of the fact that the division of time as to the possession of the child was in accordance with the consent of the plaintiff, we shall go no further than to say that we think that portion of the judgment is also proper.

Wherefore, the judgment is affirmed.