BROWN *v.* VINSON *et al.*

(*Nashville,* December Term, 1948.)

Opinion filed January 17, 1949.

HOYT BRYSON and MARSHALL E. DUGGIN, both of Woodbury, for appellants.

JAMES H. CUMMINGS and J. BARRETT MELTON, both of Woodbury, for appellee.

. Mr. Justice Tomlinson delivered the opinion of the Court.

This is a suit between the administrator of Bob Brown's estate and Letha and Oik Vinson as to which is the owner of four United States War Savings Bonds (Series E) purchased by and registered in the name of the intestate, Bob Brown. He folded these bonds one over the other and on the outside bond penciled the following: "To Letha Vinson and (Oik) Vinson. Bob Brown," and thereupon delivered them to Vinson and wife as a gift *inter vivos*. Brown died a few weeks later.

The administrator instituted this replevin suit for recovery of the bonds on the theory that they cannot legally be the subject of a gift *inter vivos* by mere physical delivery accompanied with words evidencing a gift. The administrator's insistence is that the terms of these bonds and the regulations of the United States Treasury Department with reference to transfer prevent them from being the subject of a gift *inter vivos* in any manner other than by registration in the name of the donee, or designation as beneficiary in the face of the bond.

The Chancellor sustained the bill of the administrator. Mr. and Mrs. Vinson have appealed and by appropriate assignment of error present for our determination the question stated. The very thorough briefs submitted in behalf of the parties refer to about all the cases we have been able to find upon this question.

It is provided upon the face of each bond that:

"This bond is issued pursuant to Treasury Department Circular No. 653, second revision, . . . This bond is not transferable; and, except as provided in said regulations, it is payable only to the registered owner."

The circular referred to in the above quotation contains the following provision:

"3. Bonds of Series E will not be transferable, and will be payable only to the owner named thereon, except in case of death or disability of the owner or as otherwise specifically provided in the regulations governing savings bonds, and in any event only in accordance with said regulations. Accordingly, after they are duly issued they may not be sold, discounted, hypothecated as collateral for a loan or the performance of service, or disposed of in any manner other than as provided in the regulations governing savings bonds, and, except as provided in said regulations, the Treasury Department will recognize only the inscribed owner, during his lifetime, and thereafter his estate or heirs."

A gift *inter vivos* is not effective unless the complete dominion and control of the gift is surrendered by the donor and acquired by the donee. Figuers v. Sherrell, 181 Tenn. 87, 96, 178 S. W. (2d) 629, 152 A. L. R. 420. Stated in the alternative, the question here is whether all that which was done between Brown and the Vinsons is sufficient to meet the requirements of this rule, in view of the provisions and regulations stated. The exact question has not been determined in this jurisdiction.

In considering what is the correct answer to the question stated, it is of some importance to note that the donor by request in the manner provided by the regulations had it within his power during his life to cause the re-issuance of these bonds with these donees named as beneficiaries, or in their names. The donor had not, therefore, done all that he could to make the gift *inter vivos* effective.

It is important also that this particular type bond matures ten years from date of issuance. No interest is paid until the maturity date unless the bond is surrendered. The rate of interest for the entire period increases the longer it is kept. The amount of such bonds which may be purchased in any one year by one person is limited by the regulations of the Treasury Department. These characteristics of this type bond make it apparent, as the Courts have observed, that the purpose of the issuance of such bond and its controlling regulations is to attract people of moderate means and thereby facilitate and increase the sale of these bonds, and also to encourage thrift.

In the New Jersey case of *Fidelity Union Trust Co.* v. *Tezyk,* 140 N. J. Eq. 474, 55 A. (2d) 26, 27, 173 A. L. R. 546, it is said that the Courts of various jurisdictions are consistent in holding that the regulations of the Treasury Department with reference to such bonds ''must be recognized and given the force of federal law by the courts of the various states'', citing authorities. It was then pointed out in that case that:

''The purport of the regulations indicates a clear intention that 'E' Savings Bonds shall not be transferable except by the prescribed processes of registration''. 140 N. J. Eq. 474, 55 A. (2d) at page 27, 173 A. L. R. at page 548.

The Court observed that these conditions were imposed ''to enhance the borrowing power of the federal government.'' It was held in that case that because of the regulations mentioned such bonds were not the subject of a gift *causa mortis* in the absence of registration in the name of the donee. That opinion concluded with this statement:

"It seems quite clear that the conditions under which these bonds were issued make registration the sole evidence of ownership with the one necessary exception of recognizing formal procedures for the administration of estates. If any further exception is to be made for gifts *causa mortis,* then this action should be taken by the federal government, so that there might be a consistency in the terms of these obligations throughout the states." 140 N. J. Eq. 474, 55 A. (2d) at page 28, 173 A. L. R., at page 549.

In the Kentucky case of *Moore's Administrator* v. *Marshall,* 302 Ky. 729, 196 S. W. (2d) 369, 168 A. L. R. 241, the Court first called attention to the fact that the Act of Congress authorizing the issuance of these bonds and the regulations of the Treasury pursuant thereto were part of the contract and reflected the aforementioned purposes of the provision with reference to nontransferability, and then said:

"The nontansferability of the certificates was a protection and a security for both the government and the registered owner thereof, and this court has no powers to waive this benefit on behalf of the government. We must, therefore, necessarily hold that George F. Wallace could not transfer the ownership of said certificates by gift thereof, and that Mrs. Wallace is not entitled to the proceeds thereof, her title to said certificates being dependent upon her ownership thereof. The obligation of the government to pay the amounts of the certificates being limited to paying George F. Wallace, no title to the certificates, or right to proceeds thereof, passed by a manual delivery of the certificates with the intent to make a gift of the certificates, or the amounts." 302 Ky. 729, 196 S. W. (2d) at page 372, 168 A. L. R. at page 244.

It cites the New York case of *Saper* v. *Sussman,* 185 Misc. 277, 56 N. Y. S. (2d) 377, to the same effect and makes this further observation:

"A holding that these United States Savings Bonds are transferable by gift *inter vivos* would defeat the purposes of the Act of Congress and the Treasury regulations, and would open the door for evasion of plainly expressed restrictions on transfer." 302 Ky. 729, 196 S. W. (2d) at page 372, 168 A. L. R. at pages 244, 245.

The annotator in 173 A. L. R., at page 550 refers to the Pennsylvania case of *Ruben* v *Ruben,* 95 Pittsb. Leg. J. 65, wherein the Court makes what seems to be a very logical statement, to-wit:

"That there should be one law regulating United States savings bonds is a matter of necessity, and this must be the law of the Federal government which issues the bonds."

The Florida case of *Marshall* v. *Felker,* 156 Fla. 476, 23 So. (2d) 555, 161 A. L. R. 167, relied upon by appellants here, holds that such bonds may be the subject of a valid gift *inter vivos,* notwithstanding the provision in the face of the bond and in the regulations to the effect that such bonds are not transferable and will be payable only to the owner named on the face of the bond or his estate. The Court places its conclusions upon the proposition that any personal property of which the legal or equitable title can pass by delivery is the subject of a valid gift *inter vivos,* and that the question of whether the United States will honor the gift is a matter solely between the donee and the government, and is a fact disconnected with the question of whether the gift *inter vivos* was complete.

Notwithstanding our deference for the learned Florida Court, we are compelled to disagree with its conclusion.

Its decision apparently overlooks the clear purpose hereinbefore mentioned in the making of the regulations under which the bonds were issued, and defeats those provisions, though they are in fact a part of the contract. Further. if the donee cannot, as a matter of right, collect the debt evidenced by this paper called a bond, then it seems clear that the decision in the *Florida Case* does not meet the requirements of our rule that a gift *inter vivos* must be complete.

Appellants here likewise rely upon our case of *Dietzen* v. *American Trust & Banking Co.*, 175 Tenn. 49, 131 S. W. (2d) 69, wherein it is held that the federal regulations applicable to the securities there involved do not prohibit gifts *causa mortis* of certain United States Savings Bonds and Postal Savings Certificates. In the *New Jersey Case* hereinabove mentioned the Court distinguishes the *Dietzen Case* by pointing out that the *Dietzen Case* found the federal regulations applicable there not to prohibit such gifts. The *Kentucky Case* hereinbefore cited also referred to and distinguished the *Dietzen Case* from the question we have here by pointing out that it is a gift *causa mortis* rather than a gift *inter vivos*. This Court in the *Dietzen Case* recognized this distinction, viz.:

"While *donatio causa mortis* is not testamentary in character, nevertheless it bears some resemblance thereto in that it is a disposition of property in contemplation of death. We think that under a fair interpretation of the regulation there is nothing therein inconsistent with the view that savings certificates are transferable by will. By analogy, therefore, we take the view that transfer by gift *causa mortis* is permissible thereunder." 175 Tenn. at page 57, 131 S. W. (2d) at page 72.

While there is a division of authority as to whether a gift *inter vivos* of United States War Savings Bonds

Series E is effective by physical delivery, the weight of authority seems to be that such a gift by delivery only with appropriate words indicating an intention to give, but without registration, etc., in the name of the donee, is not effective, since it is in violation of the regulations and provisions under which these bonds were issued. We are in accord with this view on principle. It seems to us that to hold otherwise would be to ignore the regulations which are a part of the law under which they were issued, and would hinder the accomplishment of the purposes intended by those regulations and lead to confusion as to the disposition of the great amount of these bonds issued in every one of our states.

Moreover, since the attempted gift in such manner does not enable the intended donee to collect the debt which such a bond evidences if the United States Government elects not to respect the transaction, then complete dominion and control of the gift is not acquired by the donee as required by our rule governing gifts *inter vivos,* and it becomes uncertain as to who owns what with reference to the debt evidenced by these bonds.

For the reasons stated, we are of the opinion that there was no gift *inter vivos* of the bonds here involved, and that they are, therefore, the property of the Bob Brown estate. The Chancellor's decree so holding is affirmed.

All concur.