AB INTESTATO OF BORIS NAKDIMEN ET AL., Heirs-Appellants-
Appellees; AARON KURIE, Creditor-Appellant-Appellee.

No. 12529. Decided September 15, 1961.

*Luis F. Cuyar* and *Jorge Benítez Gautier* for appellant Aaron Kurie. *Joshua Hellinger* for appellants-heirs.

Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, and Mr. Justice Blanco Lugo and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Within the administration proceeding of the estate of Boris Nakdimen upon his death, the Superior Court, San Juan Part, rendered judgment (a) acknowledging a credit of $1,425 in favor of Aaron Kurie; and (b) determining that certain United States E Series, Savings Bonds and Postal Savings Certificates, 1954 Series, which had been transferred by the deceased to said Aaron Kurie, should be included in the capital to be distributed among the heirs. An appeal was taken before us to review both pronouncements.

Nakdimen died at San Juan, Puerto Rico, on January 11, 1956 without having made any testamentary provision. In the absence of any forced heirs, his brothers and sisters, five in all, were declared his heirs-at-law. Prior to his death Nakdimen sent by registered mail, on December 27, 1955, to his intimate friend Kurie, the above-mentioned bonds with an undated letter written in Hebrew, which translated literally reads as follows.

"Best and true friend Mr. Kurie:

Excuse me for my writing in Yidish and also for not answering you right away your letter. I was today to my Doctor and he gave me to understand that Doctor Crone and also the Mayo Clinic do not want to take the responsibility for what might happen after the operation. I am awaiting your coming to Puerto Rico. You will be the one and only that will help select

the best road. Mr. Kurie, I know that you like me but how can I live to have you in Puerto Rico, I hope that soon I will have you here. I stay very little in Corozal. I send you 2500 in Postal Savings and 6000 in Bonds, *you should have it all for yourself if anything happens to me.* You are my only and best friend Mr. Kurie and you have suffered with me all those months I was by you this year and before. I owe you so much money that we will straighten out when you come. I believe there is no hope left for me, I believe that all will remain between us two, what you know. I will await a letter from you as soon as you receive it. I am finishing my writing, I send you all my hearty regards, your best friend.

Boris Nakdimen

Write me to the address B. Nakdimen, P. O. Box 4132—San Juan, Puerto Rico.

Your letter you wrote me remained in my head, it is the reality." (Italics ours.)

Later he wrote another letter, undated and in the same language, whose literal translation is the following:

"Dear Friend Mr. Kurie:

It is no good with me again. It gripped me and put me in bed. I feel very bad. I cannot seem to wait for you. I don't know what to do. I have you steady in my mind. I thank you for your letter but *I want the Bonds shall be for you because I will not last long.* Forgive me all I cannot write more. I greet you all heartily.

Your best friend,

Boris." (Italics ours.)

Kurie testified at a hearing to establish that he had advanced money on four different occasions to Nakdimen as loans amounting to $1,425. He stated that he did not have any documents or receipts acknowledging the debt, nor checks, because the money had been delivered in cash. The heirs objected to this statement because it referred to transactions with a decedent. Evidence was presented to establish that this debt was not accounted for in the books of the decedent, even though a debt was acknowledged for the sum of $251.06 to Reliable Watch Co., a firm under which Kurie did business.

I

■ The trial court showed that Kurie's statement on the advances of money to the deceased had not been contradicted, "and therefore we have to state that upon his death Nakdimen owed Kurie the amount of $1,425." It does not appear from the transcript of evidence that the respondent judge had specifically ruled on the objection presented to the admissibility of the aforesaid statement in order to establish the existence of the debt. In view of the findings of fact set forth and that no other evidence was presented concerning this matter, it is necessary to conclude that he overruled said objection.

Section 3 of the Act of March 10, 1904 (Sess. Laws, p. 130, 32 L.P.R.A. § 1738) provides that:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this section shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Since *Wilcox* v. *Axtmayer et al.*, 23 P.R.R. 319 (1916), we have interpreted the provision copied as an impediment for a person to be a witness, that is, that a party in an action brought against the heirs or legal representatives of a deceased person, based on transactions had with the latter, cannot testify as witness of said transaction without first being called by the adverse party. Said case involved a verbal agreement for the payment of attorney's fees in an action for divorce. We said: "Great caution should be exercised in weighing evidence like that introduced in this action, [Defendants' predecessor] had died when the complaint was filed. The plaintiff was unable to offer in evidence any document by which [said predecessor] had acknowledged directly or indirectly in a clear and unmistakable manner the obligation

which the plaintiff alleges he contracted with him, and to prove such an obligation by admitting alleged statements of a person who is no longer able to appear before a court and testify, is indeed very venturesome." See *Biaggi* v. *Heirs of Esbrí*, 71 P.R.R. 420 (1950) ; *Pereles* v. *Martinó*, 73 P.R.R. 793 (1952) ; and *Danz* v. *Suau*, 82 P.R.R. 591 (1961).

Conscious that this legal provision should be considered rather as an element to be considered by the judge in weighing the evidence than as a strict rule of exception, *Aldea* v. *Tomás*, 51 P.R.R. 740 (1937), we have reconciled the strictness of its application by refusing to extend it beyond the express terms of the statute.[1] However, the facts under our consideration did not permit the trial judge to admit the statement offered to prove the existence of the credit claimed, which flowed precisely from the lips of one of the parties to the transaction when the alleged debtor had died. *Cf. Cestero* v. *Heirs of Cestero*, 35 P.R.R. 908, 915 (1926), where it is stated that the expression "I loaned my brother $1,000" was not admissible if it had been timely objected.

Thus, the trial court committed error in dismissing the timely objection raised by the heirs' attorney.

## II

The Series E bonds, known as Liberty Bonds, involved in this case, were issued on August 19, 1954 in favor of the deceased Boris Nakdimen. On the back thereof it is stated that they have been issued subject to Circular 653 of the Treasury Department of the United States (Fourth Revision) and to the pertinent regulations, the provisions of which are incorporated by reference. It is specifically stated that they are not transferable and are payable only to the person named in the bond except as otherwise provided in said regulations.

---

[1] *Saunnión* v. *Díaz*, 29 P.R.R. 572 (1921) ; *García* v. *Santos*, 29 P.R.R. 820 (1921) ; *Lezcano* v. *Heirs of Sifonte*, 42 P.R.R. 387 (1931) ; *Colón* v. *Succession of Tristani*, 45 P.R.R. 219 (1933) ; *Sánchez* v. *Sánchez*, 58 P.R.R. 580 (1941) ; *Viera* v. *Heirs of Goitía*, 60 P.R.R. 637 (1942) ; *Rodríguez* v. *Arocho*, 62 P.R.R. 672 (1943) ; *Boscio* v. *Vilá*, 67 P.R.R. 567 (1947).

446

In order to receive payment it is required that the owner present the bonds personally, and after due identification, sign the request for payment before an agent authorized to make said payment. It is advisable to notice that before transferring the bonds to his friend Kurie, deceased Nakdimen had signed the request for payment. The pertinent provisions of the regulations are copied in the footnote.[2]

 The trial court correctly held that, even though the bonds were transferable, since the two letters copied at the beginning of this opinion were undated they could not be considered as a gift causa mortis.[3] Therefore, since gifts

---

[2] The pertinent provisions on bonds are the following, copied from Tit. 31 C.F.R. (1959):

"§ 315.0 *Applicability of regulations.* The regulations in this part apply generally to all United States Savings Bonds of all series of whatever designation, bearing any issue dates whatever, except as otherwise specifically provided herein."

"315.20 *General.* (a) No judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary, and all other provisions of this subpart are subject to this restriction. Otherwise, a claim against an owner or coowner of a savings bond and conflicting claims as to ownership of, or interest in, such bond as between coowners or between the registered owner and beneficiary will be recognized, when established by valid judicial proceedings, upon presentation and surrender of the bond, but only as specifically provided in this subpart."

"315.22 . . . . . .

(b) *Gifts causa mortis.* A bond belonging solely to one person will be paid or reissued on the request of the person found by a court to be entitled thereto by reason of a gift causa mortis by the sole owner."

"316.9 *Nontransferability.* Bonds of Series E may not be used as collateral for a loan or as security for the performance of an obligation, or transferred inter vivos by voluntary sale or gift, discounted or disposed of in any manner other than as provided in the regulations governing United States Savings Bonds. Except as provided in said regulations, the Treasury Department will recognize only the inscribed owner, during his lifetime, and thereafter his estate or heirs."

[3] It was further stated that the letters could not be considered as a holographic will because they were written in a language which was neither in English nor Spanish and were not written in the presence of two interpreters selected by the testator. This provision of § 633 of the Civil Code (31 L.P.R.A. § 2149) refers to the open will. As to the holographic will it is expressly said that foreigners may execute holographic wills in their own language (§ 638 of the Civil Code, 31 L.P.R.A. § 2161).

which are to become effective upon the death of the donor partake of the nature of provisions by last will and shall be governed by the laws established for testamentary succession —§ 562 of the Civil Code (31 L.P.R.A. § 1985), the letters in question can not be considered as holographic will—§ 637 of the Civil Code (31 L.P.R.A. § 2161). *Cf. Castañer v. Superior Court*, 81 P.R.R. 841 (1960); *Crespo v. Irizarry*, 71 P.R.R. 902 (1950); *Ex parte Planis*, 42 P.R.R. 665 (1931); *Ex parte Vázquez*, 34 P.R.R. 234 (1925). The provisions of the federal regulations expressly acknowledge gifts causa mortis with certain limitations, 31 C.F.R. §§ 315.20 (a), 315.22 (b), and 316.9 (1959).

The trial court determined that "savings bonds as well as savings (postal) certificates are not transferable and therefore cannot be donated inter vivos." It relied on *Ex parte De Jesús*, 68 P.R.R. 646 (1948), where we held that in a loan contract between purchasers of United States savings bonds and the Federal Government, since the latter is one of the contracting parties, the contract becomes a federal one and it is necessarily governed by the federal laws and regulations, and we added that any state law in conflict therewith is superseded by their provisions. The position assumed in the *De Jesús* case was later confirmed in *Veve v. Secretary of the Treasury*, 78 P.R.R. 695, 698 (1955).[4] Nevertheless, both situations involved bonds issued in co-ownership. In the present case it concerns bonds issued in the name of a single person, that is, the original purchaser. Neither is our holding

---

[4] In the *Veve* case cited, we held that when bonds which have been issued in co-ownership remain in the exclusive possession and control of one of said owners until his death, and it is by virtue of the latter's death that the survivor for the first time receives effective rights over the same, said survivor is subject to pay state inheritance tax on the entire amount of the bands. See, *Smith v. Smith*, 169 N.E.2d 130 (Ind. 1960); *In re Berzel's Estate*, 101 N.W.2d 557 (N.D. 1960); *In re Messerschmidt's Estate*, 73 N.W.2d 123 (S.D. 1955); *In re Kaspari's Estate*, 71 N.W.2d 558 (N.D. 1955); cf. *District of Columbia v. Wilson*, 216 F.2d 630 (D.C. 1954); *Succession of Bendel*, 116 So. 2d 84 (La. 1959); *State Inheritance, Estate or Succession Tax on United States Savings Bonds*, 39 A.L.R.2d 698 (1955).

in *Ronda* v. *Torres*, 71 P.R.R. 657 (1950) of strict application to the effect that the amount of Series E bonds purchased by a husband and registered in his wife's name, upon the husband's death belong exclusively to the widow and not to decedent heirs. This is precisely one of the ways to make a gift inter vivos of this type of obligations, that is, purchasing the bond and directly registering it in the name of the donee, who by virtue thereof and by operation of the regulations themselves, is acknowledged as owner. The other way which presents no difficulty is to purchase the bond in the name of the donor and later request its reissuance in favor of the donee. Thus, we must consider whether under certain circumstances the bonds and postal savings certificates issued in the name of the sole owner can be subject of gift inter vivos.

The view of the American courts on whether savings bonds may be subject of either a gift inter vivos or causa mortis is not unanimous. Some hold the negative on the ground of the literal provision of the federal regulations—which is copied on the bond itself—to the effect that the same are nontransferable, warranted by (a) the need for a uniform application of the contractual relations between the government and the purchaser; (b) the need to aid the government to obtain money; (c) the convenience of encouraging savings and thrift by small investors, and hence, check inflation; (d) to spread ownership of the public debt among as many members of the public as possible. *Connell* v. *Bauer*, 61 N.W.2d 177 (Minn. 1953); *Nelson* v. *Wheeler*, 256 F.2d 1080 (Mont. 1953); *Ex parte Little*, 67 So.2d 818 (Ala. 1953); *In re Hackett's Estate*, 113 N.Y.S.2d 688 (N.Y. 1952); *Weeks* v. *Johnson*, 82 A.2d 416 (Mo. 1951); *Collins* v. *Jordan*, 110 N.E.2d 825 (Ohio 1949); *In re Nettle's Estate*, 91 N.Y.S.2d 255 (N.Y. 1949); *Brown* v. *Vinson*, 216 S.W.2d 748 (Tenn. 1949); *Hatfield* v. *Buck*, 85 N.Y.S.2d 613 (N.Y. 1948); *In re Bartlett*, 71 F. Supp. 514 (D.C. N.Y. 1947); *Fidelity Union Trust Co.* v. *Tezyk*, 55 A.2d 26 (N.J. 1947); *Bergman* v. *Greenwich Sav.*

*Bank*, 74 N.Y.S.2d 638 (N.Y. 1947); *In re Tonkin's Estate*, 65 N.Y.S.2d 484 (N.Y. 1946); *Moore's Adm'r* v. *Marshall*, 196 S.W.2d 369 (Ky. 1946); *Bunch* v. *Hulsey*, 196 S.W.2d 373 (Ky. 1946); *Saper* v. *Sussman*, 56 N.Y.S.2d 377 (N.Y. 1945); *In re Borchardt's Estate*, 38 N.Y.S. 987 (N.Y. 1942); *In re Owens' Estate*, 32 N.Y.S.2d 747 (N.Y. 1941). See, also, Jones, *United States Savings Bonds, Series E., F. and G.*, 11 Md. L. Rev. 265–275 and 282–288 (1950). Note, 32 Minn. L. Rev. 158 (1948); *Right Upon Death of Co-owners of United States Savings Bonds*, 37 A.L.R.2d 1221 (1954). The courts which have held that the bonds may be subject of a gift indicate that the nontransferability provision only governs the relations between the government and the purchaser and answers the need to protect the Treasury against adverse claimants to the bonds and to establish a uniform system of payment which will make them attractive in the investment market because of their mobility and the facilities offered for their redemption. They acknowledge, however, that local statutes—especially those concerning hereditary estates and systems of property distribution—are valid for the purpose of determining the relations among individuals. In order to reconcile both provisions—Federal regulations and local statutes—and to confine each one to the scope of its respective application, recourse has been made to the ingenious formula of ordering the payment of the bonds by strictly following the specified procedure and complying with the requisites provided for said case by the federal regulations, and once the redemption has been effected, the proceeds are deposited subject to the final ruling of the court applying the local statute governing its distribution. *Levites* v. *Levites*, 169 N.E.2d 574 (Ill. 1960); *Silverman's* v. *Mc-Ginnes*, 259 F.2d 731 (C.A. 3, 1958); *Moore* v. *Brodrick*, 123 F. Supp. 108 (D.C. Kan. 1954); *In re Presender's Estate*, 125 N.Y.S.2d 83 (N.Y. 1953); *Velleman* v. *Stern*, 285 P.2d 681 (Cal. 1955); *Hausfelder* v. *Security-First Nat. Bank*,

176 P.2d 84 (Cal. 1946); *Marshall* v. *Felker*, 23 So.2d 555 (Fla. 1945); *In re Vanicek's Estate*, 17 N.W.2d 477 (Neb. 1945); *Blair* v. *Kirchner*, 49 N.E.2d 292 (Ill. 1943); *In re Borchardt's Estate*, 38 N.Y.S.2d 987 (N.Y. 1942); *Dietzen* v. *American Trust & Banking Co.*, 131 S.W.2d 69 (Tenn. 1939); *In re Estate of Diskin*, 161 Atl. 893 (Pa. 1932).

It is necessary to set forth that under certain circumstances we have ordered the cashing of the bonds and the depositing of the proceeds thereof at the disposal of the creditors of the estate, *Barrios* v. *Heirs of Manzano*, 79 P.R.R. 895 (1957).

As to postal savings certificates being subject of a gift inter vivos or causa mortis, see, *In re Vanicek's Estate*, 17 N.W.2d 477 (Neb. 1945); *Blair* v. *Kirchner*, 49 N.E.2d 292 (Ill. 1943); *Dietzen* v. *American Trust & Banking Co.*, 131 S.W.2d 69 (Tenn. 1939); *In re Estate of Diskin*, 161 Atl. 893 (Pa. 1932); *Williams* v. *Letton*, 15 S.W.2d 296 (Ky. 1929). See, also, 39 C.F.R. § 18.14(c).

■ ■ After carefully considering the question we will adopt as local rule that which acknowledges that savings bonds and postal savings certificates may be subject of a gift inter vivos provided the redemption or exchange thereof is adjusted to the *procedure* specified in the federal regulations. The right of the parties to the proceeds of said bonds, however, will be governed by the local statutes.

There is not the least doubt that deceased Nakdimen attempted to transfer the bonds and certificates in favor of a particular person. We have decided that the transfer was not causa mortis for the reason stated that the documents which support such action do not comply with the requisites of the applicable testamentary provision. We have before us a gift inter vivos which was not only made in writing but which was simultaneously delivered with the thing donated, for no other interpretation can be applied to the remittance by mail of the bonds which were also signed by Nakdimen in

the space provided for the request of exchange or redemption. We accept that the first letter may be considered a gift which would be effective at the death of the donor—its wording states that "you should have it all for yourself *if anything happens to me.*" But upon Kurie's apparent protest that he was not worthy of Nakdimen's generosity, the latter again writes to him and says "I want the bonds shall be for you because I will not last long." We believe that the change in the phraseology should be interpreted as if he had eliminated the original condition for the gift, that is, "if anything happens to me." The fact that upon making the gift the donor might have been influenced by the imminence of the death which he anticipated does not alter the situation. This is an element to be considered especially upon determining tax assessments, a matter which is not in issue in this case. *City Bank Farmers Trust Co.* v. *McGowan*, 142 F.2d 599, 601; *In re Thompson's Estate*, 68 N.E.2d 71 (Ohio 1946); *Mossberg* v. *McLaughlin*, 7 A.2d 910 (Conn. 1939).[5]

In view of the foregoing, the judgment rendered by the Superior Court, San Juan Part, on June 4, 1957, will be reversed and a new judgment rendered with the following pronouncements: (*a*) dismissing the claim of Aaron Kurie to the estate of the deceased Boris Nakdimen, for loans amounting to $1,425 and (*b*) ordering Juan R. Molina, judicial administrator, or the person actually in charge of said office, to proceed to redeem or exchange the aforementioned bonds, Series E and the postal savings certificates, and to deliver the amount thereof to Aaron Kurie.

---

[5] The distinction of whether a gift has been made in contemplation of death is important in a tax system in which a gift tax as well as an estate tax is levied, with different rates applicable. This question need not concern us locally because our statute, Act No. 303 of April 12, 1946 (Sess. Laws, p. 782, 13 L.P.R.A. § 881 *et seq.*) includes a gift inter vivos as well as a transfer by inheritance. See, also, § 10(c) of the aforesaid Act (13 L.P.R.A. § 891 (c)), which deals with the presumption of gift in relation to certain transfers.