Eugene M. Tanner departed this life on March 6, 1945, intestate, leaving surviving him as his heirs, his wife, Agnes R. Tanner, his mother, Mrs. Bertha Henderson Walker, a full brother, Benjamin Hardee Tanner, and a half brother, Howard Dee Walker, leaving separate and community property. The separate property was inherited by the mother, his brother and half-brother. The community property was inherited by the wife and mother. During the existence of the community, decedent purchased with community funds United States War Savings Bonds which were registered in the name of Eugene M. Tanner or Agnes R. Tanner, having a total cash value of $48,150, and United States War Savings Bonds which were registered in the name of Agnes R. Tanner or Eugene M. Tanner, having a total cash value of $6,750, or a grand total cash value of $54,900. In the taking of the inventories in the estate, these War Savings Bonds were omitted therefrom.
On a rule against the tax collector to fix the inheritance tax, the heirs alleged that these War Savings Bonds did not form any part of decedent's estate in that the bonds were issued and registered by the Treasury of the United States under and pursuant to the laws governing the issuance of such bonds with particular reference to Circular No. 530, Fifth Revision, which specifically provides: "If either co-owner dies without having presented and surrendered the bonds for payment to a Federal Reserve Bank on the Treasury Department, the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment will be made only to him * * *. Upon proof of the death of one co-owner and appropriate request by the surviving co-owner the bond will be re-issued in the name of such survivor alone, or in his name with another individual as co-owner, or in his name payable on death to a designated beneficiary." Therefore, the heirs contend that under this provision, the bonds belong exclusively to Agnes R. Tanner, and no inheritance tax is due thereon.
In the rule, they set out the inheritance tax to be due by the heirs, respectively: Benjamin H. Tanner, $234.72; Howard Dee Walker, $44.87; Mrs. Agnes Richard Tanner, $159.46, and Bertha H. Walker, $210.06, making a total of $649.11, based upon the properties inventoried.
In answer to the rule, the tax collector admitted that the inheritance tax was correctly computed if the bonds would be omitted, but expressly averred that the said bonds should be included in the computation of the tax.
On trial of the rule, the trial judge held that the bonds were a part of the community estate left by the decedent Eugene M. Tanner, and accordingly one-half of the actual value of said bonds were subject to the inheritance tax of this State. He fixed the inheritance tax due by the respective parties: Benjamin H. Tanner, $234.72; Howard Dee Walker, $44.87; Agnes R. Tanner, $446.83 and Mrs. Bertha H. Walker, $523.73. The heirs have appealed.
In this court, we are concerned only with the inheritance tax due by Mrs. Agnes R. Tanner and Mrs. Bertha H. Walker in that the trial judge fixed the inheritance tax due by Benjamin H. Tanner and Howard Dee Walker as claimed in the rule. The question presented is whether the War Bonds, registered as aforesaid, constitute a part of the community estate of the decedent, or whether they belong solely and exclusively to the survivor, Agnes R. Tanner.
The bonds in question were issued pursuant to 31 U.S.C.A. § 757c, subsection a, which authorizes the Secretary of the Treasury, with the approval of the President, to issue United States savings bonds, the proceeds of which shall be available to *Page 644 
meet any public expenditure. Under this subsection, the various issues and series of the savings bonds were to be in such forms, offered in such amounts, and subject to any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe.
In pursuance to this authority, amongst other regulations, as contained in official circular No. 530, 5th revision, the Secretary of the Treasury provided that: "If either co-owner dies without having presented and surrendered the Bonds for payment to a Federal Reserve Bank or the Treasury Department, the surviving co-owner will be recognized as the sole and absolute owner of the Bonds and payment will be made only to him." This regulation is made a part of the bond by reference.
The question presented in this case is res nova in the State of Louisiana. The question, however, has been presented to the courts of other States, to the United States Court of Claims and the Federal District Courts. The law and the result of these decisions may be summarized as follows:
[1] (1) The bonds in controversy constitute a contract between the United States and the purchasers of these bonds, and the rights of the survivor arise solely from this contract.
[2, 3] (2) Congress is given the power under the Constitution in Article 1, Section 8, Clause 2, "to borrow Money on the credit of the United States." That power cannot be burdened or impeded or in any way affected by the actions of any State. Issuance of the involved savings bonds is an exercise of this power.
(3) Article 6, Clause 2, provides, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
[4-6] (4) Because the Federal Government is a party to the contract, this is a Federal contract which is necessarily controlled by the Federal law. It is based upon the exercise of the power delegated to Congress to borrow money on the credit of the United States. The borrowing power necessarily includes the power to fix the terms of the government's obligation. The Treasury regulations are within the authority given the Secretary of the Treasury by the Congress and have the force of Federal law.
[7] (5) Rules and regulations prescribed by administrative bodies and officers and which are adopted pursuant to authority of an act of Congress, so long as they are reasonably adapted to the enforcement of the act, and are not in conflict with express statutory provisions, have the force and effect of law. They likewise become the supreme law of the land.
(6) The regulations provide in part that the form of registration "will be considered as conclusive of suchownership and interest"; that the bonds are not transferableand are payable only to the owners named; that they may not besold or hypothecated; that they are payable solely to the registered owner or co-owner during their lifetime, and that, after the death of the registered owner, or the co-owner, the surviving co-owner shall be recognized as the "sole and absolute owner," and that the bonds will be paid or re-issued in accordance with the regulations as though it were registered in the name of the surviving co-owner. (Italics ours.)
[8] (7) Each of these bonds, together with the Statutes, Treasury regulations, and circulars constitute a valid and binding contract determining the rights of the parties therein and ownership and title of the said bonds are controlled by 31 U.S.C.A. § 757c and the aforesaid Treasury Regulations and Circulars. See United States v. Dauphin Deposit Trust Co., D.C.Pa., 50 F. Supp. 73, and the cases and annotations therein cited; Warren v. United States, 68 Ct.Cl. 634 (Texas statutes involved) certiorari denied, 281 U.S. 739, 50 S.Ct. 346, 74 L.Ed. 1154; In re Deyo's Estate, 180 Misc. 32, 42 N.Y.S.2d 379; In re Fliegelman's Will, 184 Misc. 792, 55 N.Y.S.2d 139; Harvey v. Rackliffe, 141 Me. 169, 41 A.2d 455; Ervin v. Conn,225 N.C. 267, 34 S.E.2d 402; Myers v. Hardin, Ark., 186 S.W.2d 925; Franklin Washington Trust Co. v. Beltram, 133 N.J. Eq. 11,29 A.2d 854; In re Stanley's Estate, 102 Colo. 422, 80 P.2d 332.
In all of these decisions, supra, it was held that regardless of the devolution of property as fixed by the statutes of the State wherein the litigation arose, the bonds, such as these, belonged solely and absolutely to the survivor named in the *Page 645 
bonds and such laws did not control or affect the said bonds.
They also hold that such savings bonds are issued and sold throughout the United States. Application to the issue and the sale of these securities of state law would lead to a great diversity of rules regulating title and redemption and would subject the entire financing plan of the Federal Government to exceptional uncertainty by making identical transactions subject to the vagaries of the several states and would tend to retard the sale of these bonds.
Furthermore, Congress, in exercising its constitutional authority to borrow money, delegated this authority to the Secretary of the Treasury with authority to prescribe rules and regulations. To us, these regulations are consistent with the act and are not in violation of its purposes. These regulations have the force and effect of law, which, like the act itself, become the supreme law of the land, and are to be read into the contract between the purchaser of the bonds and the United States Government.
We feel that we would be fully justified in following the rule of law announced by the decisions supra and hold that these bonds belong solely and exclusively to the survivor, Mrs. Agnes R. Tanner, forming no part of decedent's estate or the community estate formerly existing between the decedent and his surviving widow, and go no further. As stated in the case of Harvey v. Rackliffe, supra [141 Me. 169, 41 A.2d 460]: "We are not asked to overrule a rule of law already established in this state, but only to decide that, because of the supremacy of Federal law, the state rule has no application to this contract." However, we feel that these bonds are somewhat analogous to a policy of insurance where the husband obtains a policy of insurance during the community, pays the premium therefor with community funds and makes his wife the beneficiary.
It is now well settled in our jurisprudence that where a policy of life insurance is purchased by a husband with community funds, and the wife is made the beneficiary thereunder, upon the death of the husband the proceeds thereof constitute the separate and paraphernal property of the wife, and the wife is under no obligation to account to the community for the funds or premiums paid for the policy.
Had the decedent Tanner purchased a paid up policy of insurance with the $54,900 rather than the bonds involved herein, and had made his wife the beneficiary thereof, we would have to hold, under the above quoted jurisprudence, that the said proceeds of the said policy would not form any part of decedent's estate but would belong solely and exclusively to the wife, without the need of reimbursement to the community by the wife for the premium paid by the husband. We cannot see any distinction between the bonds and a policy of insurance as both are contracts entered into between the parties.
[9] The contract between the United States Government and the decedent is clear and must prevail over our community law. Under that contract, the Act of Congress, the rules and regulations adopted by the Secretary of the Treasury, the survivor, Mrs. Tanner, did not become the sole and exclusive owner of these bonds until the death of Mr. Eugene M. Tanner. To hold that the bonds formed a part of the community which formerly existed between Mrs. Tanner and the decedent, thereby being subject to the State inheritance tax, would mean that Mrs. Bertha M. Walker, the mother, would be called upon to pay an inheritance tax on property which she may never receive under the decisions quoted supra, particularly the case of United States v. Dauphin Deposit Trust Co., supra.
For these reasons assigned, the judgment appealed from is hereby amended by reducing the inheritance tax due by Mrs. Agnes R. Tanner from the sum of $446.83 to the sum of $159.46, and by reducing the inheritance tax due by Mrs. Bertha H. Walker from the sum of $523.73 to the sum of $210.06, and as thus amended, the judgment is affirmed. All costs to be paid by the Succession of Eugene M. Tanner.