FLOYD CONNELL v. CHAS. F. BAUER, EXECUTOR OF ESTATE OF WILLIAM FRENCH.[1]

November 6, 1953.

No. 36,063.

---

[1]Reported in 61 N. W. (2d) 177.

*Holst, Erickson, Vogel & Richardson,* for appellant.
*Lawrence R. Lunde* and *Foley & Foley,* for respondent.

NELSON, JUSTICE.

This is an action for the conversion of ten United States Savings Bonds, Series E, as follows:

No. D689124E issued Dec. 1941
No. D689125E issued Dec. 1941
No. M3414711E issued Jan. 1943
No. M3806713E issued Apr. 1943
No. M4410139E issued Sept. 1943
No. M7368932E issued June 1944
No. M9566969E issued May 1945 .
No. M11378741E issued Oct. 1945
No. M18101855E issued Aug. 1948
No. M18101854E issued Aug. 1948

The action was commenced September 5, 1952. On November 21, 1952, a pre-trial hearing was held before the district court at which time the facts were stipulated by counsel for the respective parties as follows:

"It is stipulated between respective counsel that there will be no objection to receipt in evidence of Defendant's Exhibits A and B so far as foundation is concerned.

"It is stipulated that the bonds described in the complaint were issued originally to William French, now deceased.

"It is further stipulated that Defendant's Exhibits A and B are applicable to said bonds. That the said bonds were delivered by said decedent to the plaintiff on or about May 1, 1951. Decedent had been ill before said delivery, but was recovering at the time of the delivery. The decedent became unconscious on May 26, 1951, and remained unconscious until the date of his death, March 13, 1952. That defendant claims to be entitled to the bonds as executor of the estate of said decedent. Plaintiff claims ownership of the

bonds, alleging that they were given to him by the decedent at the time of the delivery aforesaid as a gift. That there was no specific disposition of the bonds in the will of the decedent.

"It is also stipulated that the executor of the William French estate, as part of his duties, on the 11th day of August, 1952, filed in the Probate Court of Wabasha County, Minnesota, his inventory in which the bonds in question were set forth as part of the assets of said estate.

"Note: The stipulations herein made are not intended to determine the question whether the alleged gift was inter vivos or causa mortis."

Thereafter, the defendant moved for a summary judgment, which motion the court granted November 26, 1952. Summary judgment was entered for the defendant on January 21, 1953. Plaintiff appeals from the summary judgment.

The legal question involved is whether United States Savings Bonds, Series E, issued pursuant to Treasury Department regulations under authority of Congress can be the subject of gift either *inter vivos* or *causa mortis* without compliance with the provisions of such regulations regarding transfer. There were no fact issues presented to the court, and there was no trial on the merits. Only the stipulated facts were submitted to the court, there being no oral testimony as to facts and circumstances surrounding the claimed gift of the bonds pointing specifically toward the proof of an alleged gift as being either *inter vivos* or *causa mortis*. In the stipulated facts it was stated: "The stipulations herein made are not intended to determine the question whether the alleged gift was inter vivos or causa mortis." In the memorandum attached to the order for summary judgment, the district court set forth the conclusions upon which the order for summary judgment was based as follows:

"It appears that the terms of the bonds, together with the regulations, prohibit a gift of the bonds either inter vivos or causa mortis.

"The distinction made in some cases between the right to collect from the Federal Government and the rights of the alleged donor

and donee as between each other appears to me to be improper. A donor would not intend to make a gift which the donee could not utilize and enjoy. The courts should give effect to the restrictions under which the bonds were issued. They represent the policy of the Federal Government, and are an essential part of the contract between the government and the investor.

"The essential nature and purpose of the bonds should be the determining factor. It should not be defeated by mere consideration of procedure."

The appellant presented only one assignment of error; namely, that the court erred in granting defendant's motion for summary judgment. This appears to be a case of first impression in this court. There are no Minnesota cases of which we are aware directly in point or controlling on the issues here before us. The issues presented are as follows:

(1) Whether, under the stipulated facts, the delivery of the bonds to the plaintiff by the decedent resulted in a gift, either *inter vivos* or *causa mortis?*

(2) Whether a United States Savings Bond, which constitutes a contract between the United States Government and a citizen subject to the regulations surrounding and controlling the issue and made a part of the contract under federal law, is subject to transfer, either by gift *inter vivos* or *causa mortis*, if either one or the other is established by sufficient proof?

(3) Whether the regulations promulgated by the Secretary of the Treasury pursuant to Congressional authority either expressly or impliedly prohibit the transfer of such bonds other than by a strict compliance with such regulations?

(4) Whether either type of gift, if established, is of any force or legal consequence in the face of the prohibitions and the directives contained in these regulations?

The chief distinction between a gift *inter vivos* and a gift *causa mortis* is that the former is absolute and irrevocable while the latter is conditional, taking effect only upon the death of the donor, who, in the meantime, has the power of revocation. In

either case the gift must be complete and the property delivered and accepted. 8 Dunnell, Dig. (3 ed.) § 4021.

As to what property may be transferred by gifts, either *inter vivos* or *causa mortis*, the general rule may be summed up as follows:

"It is the general rule that every species of personal property of which the legal equitable title can pass by delivery, actual or constructive, may be the subject of a valid gift, either inter vivos or causa mortis. 28 C. J., Gifts Secs. 38, 39, 114; 38 C. J. S., Gifts Secs. 30, 31, 90; 24 Am. Jur., Gifts Sec. 66." Marshall v. Felker, 156 Fla. 476, 478, 23 So. (2d) 555, 557, 161 A. L. R. 167.

The laws applicable to the devolution of personal property in this state are in harmony with this broad general rule.

The question which the court must decide on this appeal is whether or not we are concerned with the general rule as to gifts *inter vivos* or gifts *causa mortis* in view of the fact that we have before us for consideration the question of the purpose and effect of a contract between the federal government and one of its citizens which is subject to and controlled by federal law. Since this is a case of first impression in Minnesota, there ought to be a clear distinction made between invoking the local laws of transfer and distribution applicable generally to personal property and federal law which appears to govern the provisions of these bonds and the regulations determinative of the rights of owners of the same. It is safe to say that courts generally are now agreed that the treasury regulations governing issuance and redemption of savings bonds of the series we have before us are within the scope of granted authority and have the effect of federal law and that no state law can vary the terms of federal obligations nor derogate from their full enforceability. In re Estate of Murray, 236 Iowa 807, 20 N. W. (2d) 49; Succession of Tanner (La. App.) 24 So. (2d) 642; Franklin Washington Trust Co. v. Beltram, 133 N. J. Eq. 11, 29 A. (2d) 854; McCulloch v. Maryland, 17 U. S. (4 Wheat.) 316, 4 L. ed. 579; United States v. Dauphin Deposit Trust Co. (D. C.) 50 F. Supp. 73.

Before the motion for summary judgment was acted upon by the court, two exhibits were introduced at the pre-trial conference— defendant's Exhibit A, Treasury Department Circular No. 653, and defendant's Exhibit B, Treasury Department Circular No. 530, both relating to United States Savings Bonds, with particular reference being made to §§ 315.11 and 315.47 of the latter. It was thereafter stipulated between respective counsel that there would be no objection to the receipt in evidence of the defendant's Exhibits A and B with respect to foundation. Then it was further stipulated between respective counsel that defendant's Exhibits A and B are applicable to said bonds.

The statutory authority for bond regulation (31 USCA, § 757c[a]) is as follows:

"* * * The various issues and series of the savings bonds and the savings certificates shall be in such forms, shall be offered in such amounts, subject to the limitation imposed by section 757b of this title, and shall be issued in such manner and subject to such terms and conditions consistent with subsections (b), (c), and (d) hereof, and including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe."

Treasury Department Circulars Nos. 653 and 530, as far as material, provide:

Department Circular No. 653, Second Revision, 1943:

"I.   OFFERING OF UNITED STATES SAVINGS BONDS OF
SERIES E
\*      \*      \*      \*      \*

"II.   DESCRIPTION AND TERMS OF BONDS
\*      \*      \*      \*      \*

"3.   Bonds of Series E will not be transferable, and will be payable only to the owner named thereon, except in case of death or disability of the owner or as otherwise specifically provided in the regulations governing savings bonds, and in any event only in accordance with said regulations. Accordingly, after they are duly issued they may not be sold, discounted, hypothecated as collateral for a loan or the performance of a service, or disposed of in any

manner other than as provided in the regulations governing savings bonds, and, except as provided in said regulations, the Treasury Department will recognize only the inscribed owner, during his lifetime, and thereafter his estate or heirs.

\* \* \* \* \* .

## "V. AUTHORIZED FORMS OF REGISTRATION

"1.  Bonds of Series E may be registered only in the names of natural persons (that is, individuals), whether adults or minors, in their own right, as follows: (1) in the name of one person; (2) in the names of two (but not more than two) persons as coowners; and (3) in the name of one person payable on death to one (but not more than one) other designated person. \* \* \*

\* \* \* \* \*

## "VII. PAYMENT AT MATURITY OR REDEMPTION PRIOR TO MATURITY

"1.  GENERAL.—Any bond of Series E will be paid in full at maturity, or, at the option of the owner, after 60 days from the issue date, will be redeemed in whole or in part at the appropriate redemption value prior to maturity, following presentation and surrender of the bond, with the request for payment properly executed, all in accordance with the regulations governing savings bonds.

"2.  EXECUTION OF REQUEST FOR PAYMENT.—The registered owner, or other person entitled to payment under the regulations governing savings bonds, must appear before one of the officers authorized by the Secretary of the Treasury to witness and certify requests for payment, establish his identity, and in the presence of such officer sign the request for payment, adding the address to which the check is to be mailed. \* \* \*

\* \* \* \* \*

## "X. GENERAL PROVISIONS

"1.  All bonds of Series E, issued pursuant to this circular, shall be subject to the regulations prescribed from time to time by the Secretary of the Treasury to govern United States Savings Bonds. \* \* \* The present regulations governing savings bonds are set

forth in Treasury Department Circular No. 530, Fifth Revision, as amended, * * *.

\* \* \* \* \*

"4. The Secretary of the Treasury may at any time or from time to time supplement or amend the terms of this circular, or of any amendments or supplements thereto, information as to which will be promptly furnished to the Postmaster General and the Federal Reserve Banks and Branches."

Department Circular No. 530, Sixth Revision, as amended in 1947:

### "Subpart A—APPLICABILITY

"Sec. 315.1. Applicability of regulations.—These regulations, published for the information and guidance of all concerned, apply generally to all United States Savings Bonds of all series of whatever designation and bearing any issue dates whatever, except as otherwise specifically provided herein.

### "Subpart B—REGISTRATION

"Sec. 315.2 General.—United States Savings Bonds are issued only in registered form. The name and post office (mailing) address of the owner, as well as the name of the coowner or designated beneficiary, if any, and the date as of which the bond is issued will be inscribed thereon at the time of issue by an authorized issuing agent. The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in these regulations, will be considered as conclusive of such ownership and interest. The Treasury Department will recognize no notices of adverse claims to savings bonds and will enter no stoppages or caveats against payment in accordance with the registration of the bonds. No designation of an attorney, agent, or other representative to request or receive payment on behalf of the owner, nor any restriction on the right of such owner to receive payment of the bond, other than as provided in these regulations, may be made in the registration or otherwise.

\* \* \* \* \*

"Sec. 315.4. Authorized forms of registration, Series E, and general provisions relating to their use.

"(a) Forms of registration.—Bonds of Series E may be registered only in the names of individuals (natural persons), whether adults or minors, in their own right in one of the following forms:

"(1) ONE PERSON: * * *

"(2) TWO PERSONS—COOWNERSHIP FORM: * * *

"(3) TWO PERSONS—BENEFICIARY FORM: * * *

\* \* \* \* \*

"(b) General provisions relating to forms of registration.—

\* \* \* \* \*

"Sec. 315.6. Unauthorized registration.— * * *

"Sec. 315.7. Forms of registration on reissue.— * * *

\* \* \* \* \*

"Subpart D—LIMITATION ON TRANSFER AND JUDICIAL PROCEEDINGS

"Sec. 315.11. Not transferable.—Savings bonds are not transferable and are payable only to the owners named thereon, except in case of the disability or death of the owner, authorized reissue, or as otherwise specifically provided in this Subpart, but in any event only in accordance with the provisions of these regulations. A savings bond may not be hypothecated or pledged as collateral for a loan or used as security for the performance of an obligation, except as provided in Section 315.12.

"Sec. 315.12. Pledge with the Secretary of the Treasury or Federal Reserve Banks.— * * *

"Sec. 315.13. Judicial proceedings (judgment creditors, trustees in bankruptcy, receivers of insolvents' estates and conflicting claimants).—A claim against an owner or coowner of a savings bond and conflicting claims as to ownership of or interest in such bond as between coowners or the registered owner and a designated beneficiary, will be recognized when established by valid judicial proceedings and payment or reissue will be made, upon presentation and surrender of the bond, except as follows:

"(1) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or

would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary.

\* \* \* \* \*

"Sec. 315.14.  Evidence necessary.— \* \* \*

"Sec. 315.15.  Notice of pending proceedings not accepted.— \* \* \*

\* \* \* \* \*

"Subpart G—INTEREST

"Sec. 315.19.  General.— \* \* \*

"Sec. 315.20.  Appreciation bonds.— \* \* \*

"Sec. 315.21.  Current income bonds.— \* \* \*

\* \* \* \* \*

"Subpart H—GENERAL PAYMENT AND REDEMPTION PROVISIONS

"Sec. 315.22.  Payment at maturity.— \* \* \*

"Sec. 315.23.  Redemption before maturity.— \* \* \*

\* \* \* \* \*

"Sec. 315.24.  Form and execution of requests for payment.— \* \* \*

\* \* \* \* \*

"Sec. 315.25.  Certifying officers.— \* \* \*

\* \* \* \* \*

"Sec. 315.26.  General instructions to certifying officers.— \* \* \*

"Sec. 315.27.  Interested person not to certify.— \* \* \*

"Sec. 315.28.  Presentation and surrender—all series.— \* \* \*

"Sec. 315.29.  Optional procedure limited to bonds of Series A to E, inclusive, in names of individual owners or coowners only.— \* \* \*

\* \* \* \* \*

"Subpart I—GENERAL REISSUE AND DENOMINATIONAL EXCHANGE

\* \* \* \* \*

"Sec. 315.33.  Requests for reissue.— \* \* \*

\* \* \* \* \*

"Subpart K—SINGLE NAME—ADDITION OF COOWNER, ETC.

"Sec. 315.43.   Payment or reissue.— * * *

"Sec. 315.44.   Reissue for certain purposes.— * * *

* * * * *

"Subpart L—TWO NAMES—COOWNERSHIP FORM

"Sec. 315.45.   Payment or reissue.— * * *

* * * * *

"Subpart M—TWO NAMES—BENEFICIARY FORM

"Sec. 315.46.   Payment or reissue.— * * *

* * * * *

"Subpart N—DECEASED OWNERS

"Sec. 315.47.   Payment or reissue on death of owner.—Upon the death of the owner of a savings bond who was not survived by a co-owner or designated beneficiary and who had not during his lifetime presented and surrendered the bond to a Federal Reserve Bank or the Treasury Department for an authorized reissue, the bond will be considered as belonging to his estate and will be paid or reissued accordingly, as hereinafter provided, except that reissue under the provisions of this Subpart will not be made to a creditor. In any case, reissue will be restricted to a form of registration permitted by the regulations in effect on the date of original issue of the bond, but the person entitled to the bond may hold it without change of registration and will have the right to payment before or at maturity. The provisions of this section shall also apply to savings bonds registered in the names of executors or administrators, except that proof of their appointment and qualification may not be required. Established forms for use in such cases and for requests for payment or reissue may be obtained from any Federal Reserve Bank or from the Treasury Department, Division of Loans and Currency, Merchandise Mart, Chicago 54, Illinois, and should be used in every instance.

"(a) In course of administration.—If the estate of the decedent is being administered in a court of competent jurisdiction, the bond will be paid to the duly qualified representative of the estate or will be reissued in the names of the persons entitled to share in the

estate, upon request of the duly appointed and qualified representative of the estate and compliance with the following conditions:

\* \* \* \* \*

"(b) After settlement through court proceedings.— \* \* \*

"(c) Without administration.— \* \* \*."

It appears to be well settled in the law that a bond is a contract and that each United States Savings Bond is a contract between the United States and the named registered owner. United States v. Dauphin Deposit Trust Co. (D. C.) 50 F. Supp. 73. Therefore, the federal law must govern the meaning of the bonds and the rights of the parties thereto. Knight v. Wingate, 205 Ga. 133, 52 S. E. (2d) 604.

Treasury Department Circular No. 530, § 315.4, provides three methods of registration: (1) To one person, (2) to two persons in co-ownership form, and (3) to two persons in beneficiary form. The regulations further provide for payment or reissue under strict rules, that the registered name of the owner or owners is conclusive as to ownership, and that no transfer can be made except by strict compliance with the treasury regulations. The regulations contained in Treasury Department Circular No. 653 provide that bonds of series E are not transferable and will be payable only to the owner named thereon, except in case of death or disability of the owner or as otherwise specifically provided in the regulations governing savings bonds, and in any event only in accordance with said regulations. It further provides that they may not be sold, discounted, hypothecated as collateral for a loan or the performance of a service, or disposed of in any other manner than that provided in the treasury regulations, and that except as provided therein, the Treasury Department will recognize only the inscribed owner, during his lifetime, and thereafter his estate or heirs.

Section 315.2 of the Treasury Department Circular No. 530, Sixth Revision, provides that United States Savings Bonds are issued only in registered form, that the form of registration used must express the actual ownership of and interest in the bonds and, except as otherwise specifically provided in the regulations, will be

considered as conclusive of such ownership and interest. Section 315.11 provides that they are not transferable and are payable only to the owner named thereon, except in case of the disability or death of the owner, authorized reissue, or otherwise specifically provided in that subpart, but in any event only in accordance with the provisions of the regulations. It further provides that a savings bond may not be hypothecated or pledged as collateral for a loan or used as security for the performance of an obligation, except as provided in § 315.12. Section 315.13 specifies the conditions under which, and when, judicial proceedings will be recognized, and further provides that no such proceedings will be recognized if they would give effect to an attempted voluntary transfer *inter vivos* of the bond or would defeat or impair the rights of survivorship conferred by the regulations upon a surviving co-owner or beneficiary. Section 315.47, Subpart N, provides that where the owner is deceased, if the estate of the decedent is being administered in a court of competent jurisdiction, the bond will be paid to the duly qualified representative of the estate or will be reissued in the names of the persons entitled to share in the estate, upon request of the duly appointed and qualified representative of the estate and compliance with the conditions therein set forth as to payment or reissue. Section (b) thereof provides the method for payment or reissue if the estate of a decedent has been settled in a court of competent jurisdiction. Section 315.63 provides that the Secretary of the Treasury may, at any time, and from time to time, prescribe additional, supplemental, amendatory, or revised rules and regulations governing United States Savings Bonds.

The trial court when ordering entry of summary judgment herein did not determine whether decedent's handing of the bonds in question to the appellant was an attempt to establish a gift or otherwise. The court below simply ruled that there could be no gift of such bonds. The stipulations between the parties at the time of the pre-trial conference established that the bonds in question were issued pursuant to the regulations of the United States Treasury and that those bonds were registered in the name of the decedent alone but that the plaintiff claimed ownership through a gift by

manual delivery of such bonds by decedent on or about May 1, 1951. There is nothing in the stipulation to indicate that the bonds were ever transferred in conformity with the regulations of the Treasury Department. It is clear that the bonds were in the name of the decedent alone as registered owner at the time of his death. It is clear from the form of action, which is one in conversion, and from the claims of the appellant that the bonds in question, listed as a part of the assets of the estate of William French, deceased, were at the time the action was brought in the hands of Charles F. Bauer as executor of the estate and that he claimed ownership in behalf of the estate.

The appellant cites as controlling cases holding in his favor the following: Marshall v. Felker, 156 Fla. 476, 23 So. (2d) 555, 161 A. L. R. 167; Estate of Diskin, 105 Pa. Super. 519, 161 A. 893; In re Estate of Vanicek, 145 Neb. 531, 17 N. W. (2d) 477; Blair v. Kirchner, 319 Ill. App. 348, 49 N. E. (2d) 292; and Dietzen v. American Trust & Banking Co. 175 Tenn. 49, 131 S. W. (2d) 69. In these cases gifts *inter vivos* as well as gifts *causa mortis* of United States Savings Bonds were held valid in effecting transfer without reissue and registration and, to that extent, federal regulations were set aside or made subject to state rules. In some of the cases postal savings certificates were involved, issued under regulations that were less strict regarding recognition of valid judicial proceedings. Under these decisions individuals demonstrating circumstances of varying equity were permitted to negate the conditions under which federal credit had been pledged by the application of state or local law. It was reasoned and determined in the first place that federal savings bonds or certificates were transferable by will and that therefore gifts *causa mortis* were and should be properly recognized as dispositions of property in contemplation of death and as such analogous to a disposition by will. As a result gifts *causa mortis,* and in some instances gifts *inter vivos,* when established as to such bonds and certificates were sustained as an effective transfer under the local law, at least. as between donor and donee, with an observation that the federal regulations

did not prohibit gifts of savings bonds when applying state law. In some of the cases it was reasoned that under local or state law the gift was valid as between donor and donee and that it was proper for the court to so find even if it left the prevailing party empty handed in the matter of requesting payment under the regulations governing transfer, reissue, and payment. Being clearly of the opinion that it is well-settled law that a United States Savings Bond, Series E, is a contract between the United States government and the named registered owner and that federal law governs and must be applied, we are unable to follow or adopt the reasoning set forth in the cases upon which the appellant relies.

Both *inter vivos* and *causa mortis* gifts of promissory notes, bank book deposits, certificates, corporate bonds, and other choses in action have been upheld in this state, even in the absence of endorsement. This principle is predicated no doubt on the right of a state to fix rules for devolution of personal property within its own jurisdiction. But such decisions have dealt with documents representing private obligations, while the subject matter of this appeal represents obligations of the United States government under regulations which we feel the states are bound to recognize as having the effect of federal law. These bonds are intended for issue in every one of the 48 states and are backed by the credit of the United States government and are offered for sale by the government to its citizens with certain primary aims in view; namely, to obtain money for the United States government, to check inflation, to encourage thrift and savings by small investors, and to spread ownership of the national debt among as many members of the public as possible. Since the bonds are issued under and governed by federal law, the effectuation of that policy depends upon the application of the federal law and treasury regulations promulgated pursuant thereto and governing such bonds. There seems little justification for any strained construction, through the application of local law governing the general distribution of personal property, when it is clear that we are dealing with a federal contract governed by federal laws and regulations, the uniform application

of which would remove discordant conclusions that now exist as to the precise nature of the legal interests created in these bonds. It has been well said that "the Treasury's objectives cannot be adequately served if the money value represented by the bonds can, without redemption, be made readily available to the credit structure of the nation." 32 Minn. L. Rev. 164. It should also be borne in mind, when considering that the name of the registered owner is conclusive as to ownership, that any transfer by gift, either *inter vivos* or *causa mortis*, could at any time be made fully effective on the part of the owner by his observing the procedure for registration set forth in the treasury regulations, by either an issue in co-ownership, an issue to owner and beneficiary, or generally by reissue and registration. If it were recognized that the federal regulations so permit, which must be conceded, there could be no necessity of ever attempting to set aside or circumvent these federal regulations by making them subject to the rule of state law.

Congress is given the power under U. S. Const. art. I, § 8, "To borrow money on the credit of the United States." The issuance of the savings bonds, Series E, here involved, under the Second Liberty Bond Act, is an exercise of this power.

U. S. Const. art. VI, provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

Each United States Bond, Series E, which is a contract containing as a part thereof through the terms and provisions of the bond all regulations promulgated and issued by the Secretary of the Treasury pursuant to an act of Congress, is based upon the exercise of the power delegated to Congress by the Constitution to borrow money on the credit of the United States. The borrowing power necessarily includes the power to fix the terms of the government's obligations, and any treasury regulations issued pursuant

to the federal statutes are within the authority given the Secretary of the Treasury by Congress and have the force and effect of federal law. United States v. Dauphin Deposit Trust Co. (D. C.) 50 F. Supp. 73; Legal Tender Case, 110 U. S. 421, 4 S. Ct. 122, 28 L. ed. 204; United States v. Janowitz, 257 U. S. 42, 42 S. Ct. 40, 66 L. ed. 120. See, United States v. Birdsall, 233 U. S. 223, 34 S. Ct. 512, 58 L. ed. 930.

Rules and regulations prescribed by administrative bodies and officers and adopted pursuant to authority of an act of Congress, as long as they are reasonably adapted to the enforcement of the act and are not in conflict with express statutory provisions, have the force and effect of law. Maryland Cas. Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. ed. 297. We are unable to find that the regulations of the Secretary of the Treasury determining the legal rights of the parties in regard to ownership of war savings bonds are in any way in conflict with Minnesota law, and we do not question the authority of Congress to make legislation authorizing the issuance of bonds containing such restrictions and provisions, including rights of ownership, as it may see fit. We have no difficulty in reaching the conclusion that each of said bonds, Series E, together with the statutes, treasury regulations, and circulars constitutes a valid and binding contract determining the rights of the parties therein and that ownership of the bonds is controlled by § 22 of the Second Liberty Bond Act as amended and the aforesaid treasury regulations and circulars. We cite in support of that conclusion cases which we consider controlling from other state courts: Fidelity Union Trust Co. v. Tezyk, 140 N. J. Eq. 474, 55 A. (2d) 26, 173 A. L. R. 546; In re Estate of Murray, 236 Iowa 807, 20 N. W. (2d) 49; Moore's Admr. v. Marshall, 302 Ky. 729, 196 S. W. (2d) 369, 168 A. L. R. 241; Collins v. Jordan (Ohio) 110 N. E. (2d) 825. As the court stated in the Murray case, 236 Iowa 819, 20 N. W. (2d) 55:

"* * * where a contract is affected with a public interest, legislation may prescribe and limit the terms of such a contract even to

the extent of fixing the rights of and obligations to third persons for whose benefit the contract is made."

It seems clear that no state law can vary the terms of the federal obligations or derogate from their full enforceability. U. S. Const. art. VI; Irvine v. Marshall, 61 U. S. (20 How.) 558, 15 L. ed. 994; Ruddy v. Rossi, 248 U. S. 104, 39 S. Ct. 46, 63 L. ed. 148, 8 A. L. R. 843; McCulloch v. Maryland, 17 U. S. (4 Wheat.) 316, 4 L. ed. 579; Warren v. United States, 68 Ct. Cl. 634, certiorari denied, 281 U. S. 739, 50 S. Ct. 346, 74 L. ed. 1154; Mitchell v. Edds (Tex. Civ. App.) 181 S. W. (2d) 323; In re Estate of DiSanto, 142 Ohio St. 223, 51 N. E. (2d) 639; Conrad v. Conrad, 66 Cal. App. (2d) 280, 152 P. (2d) 221; Reynolds v. Reynolds, 325 Mass. 257, 90 N. E. (2d) 338; United States v. Birdsall, *supra;* United States v. Janowitz, *supra.*

The public policy surrounding the issuance and retention of these securities is clearly revealed in the form and regulations originally made and in the amendments subsequently issued. Unlike interest on other governmental bonds, interest upon them is not currently paid but accumulates until the date of maturity or an earlier authorized date of payment. They are thus of such character and purpose that they might be described as thrift or savings securities. The purpose of the government to restrict ownership and to prohibit transfers is, therefore, clear. This was the statement of the court in Matter of Owens, 177 Misc. 1006, 32 N. Y. S. (2d) 747, in which it was held that a United States Savings Bond can never be made the subject of a voluntary transfer by way of gift or sale or pledge. It was held in the case of In re Estate of Wallace, 266 Ill. App. 500, that United States Treasury Savings Certificates were not transferable by gift, and in Fidelity Union Trust Co. v. Tezyk, *supra,* the court held that United States Savings Bonds, Series E, may not be the subject of a valid gift *causa mortis.* It was also held in that case that treasury regulations promulgated under authority of federal legislation making United States Savings Bonds subject to the treasury department must be recognized and given the force of federal law by the state courts.

This court, adopting as its own the reasoning of the New Jersey court set forth in Fidelity Union Trust Co. v. Tezyk, *supra*, and of the Kentucky court in Moore's Admr. v. Marshall, *supra*, and the reasoning of the court set forth in United States v. Dauphin Deposit Trust Co. *supra*, concludes that a bond of the type in question is not a proper subject of either a gift *inter vivos* or a gift *causa mortis*. It follows that the judgment appealed from should be affirmed.

Affirmed.

