**Alice H. SILVERMAN and Stanley Hinlein, Executors of the Estate of Edwin H. Silverman, Deceased, Appellants,**

v.

**E. A. McGINNES, Late Acting District Director of Internal Revenue and Presently District Director of Internal Revenue.**

No. 12585.

United States Court of Appeals
Third Circuit.

Argued Sept. 17, 1958.

Decided Oct. 10, 1958.

Abraham L. Shapiro, Philadelphia, Pa. (Philip M. Shiekman, Philadelphia, Pa., on the brief, Cohen, Shapiro & Cohen, Philadelphia, Pa., of counsel), for appellants.

Carolyn R. Just, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Norman

C. Henss, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

■ This is an appeal from a judgment for the defendant in an action brought by the executors of Edwin H. Silverman to recover certain estate taxes paid by them under protest.

The facts of the case are simple and uncontroverted. Edwin H. Silverman, in his lifetime, bought some E bonds issued by the United States Government each in the amount of $1,000. Some of these bonds were registered as payable to him and Alice H. Silverman, his former wife, as co-owners. Others were registered as payable to him and one or other of his minor children as co-owners. Edwin Silverman delivered these bonds to Alice Silverman stating that they were outright gifts to her and the children respectively. He confirmed this gift in writing by a letter to her. But he never had the bonds reissued in the names of the respective donees. At his death the Commissioner of Internal Revenue sought to include the value of the bonds in Mr. Silverman's gross estate under § 811(e) of the Internal Revenue Code of 1939 as an interest in property held jointly.[1]

Counsel for the Government and the District Director of Internal Revenue stipulated that the only issue in the case is "whether under the circumstances a valid gift was made, sufficient to take the bonds out of the estate of the decedent." The trial court gave a negative answer, relying on the Treasury regulations that purport to prohibit transfer of such bonds and emphasizing that the regulations are terms of the contract which the decedent made with the Government when he bought the bonds.

The regulations are, of course, important. They provide that the form of registration must express the actual ownership of the bonds and will be conclusive of such ownership. In addition they state that savings bonds are not transferable and are payable only to the owners named thereon. The regulations provide further that valid judicial proceedings establishing rights in the bonds on behalf of certain designated classes of persons will be recognized except that "no such proceedings will be recognized if they would give effect to any attempted voluntary transfer inter vivos of the bond * * *." The pertinent regulations are set out at length in the margin.[2]

---

1. Int.Rev.Code of 1939, § 811(e), 26 U.S.C. § 811(e) (1948).

2. "§ 315.2 *General.* United States Savings Bonds are issued only in registered form. The name and * * * address of the owner, as well as the name of the coowner * * * if any * * * will be inscribed thereon at the time of issue by an authorized issuing agent. The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in the regulations in this part, will be considered as conclusive of such ownership and interest. The Treasury Department will recognize no notices of adverse claims to savings bonds and will enter no stoppages or caveats against payment in accordance with the registration of the bonds. No * * * restriction on the right of such owner to receive payment of the bond, other than as provided in the regulations in this part,

may be made in the registration or otherwise.

\* \* \* \* \*

"§ 315.11 *Not transferable.* Savings bonds are not transferable and are payable only to the owners named thereon, except in case of the disability or death of the owner, authorized reissue, or as otherwise specifically provided in this subpart, but in any event only in accordance with the provisions of the regulations in this part. A savings bond may not be hypothecated or pledged as collateral for a loan or used as security for the performance of an obligation. \* \*

\* \* \* \* \*

"§ 315.13 *Judicial proceedings (judgment creditors, trustees in bankruptcy, receivers of insolvents' estates and conflicting claimants).* A claim against an owner or coowner of a savings bond and conflicting claims as to ownership of or interest in such bond as between coowners * * * will be recognized when

It is not denied that these regulations which are of long standing have the force of law.[3] The question, however, is the scope of their application.

The language of the regulations is sweeping. If they really mean that the Government has, with regard to these bonds, created a nonalienable claim we are not disposed to dispute the constitutional power of Congress to do so. But the question to be faced is whether these regulations include not only the rights of the holder of the bond as against his Government, the debtor, but also whether they determine the rights of individual citizens against each other arising out of transactions with these Government bonds.

We are impressed with the results and the reasoning reached in such state cases as the following.

If one becomes the registered owner of one of these bonds in fraud of the rights of another he, or his administrator, will be compelled to hold the proceeds in trust for the person equitably entitled. Henderson's Adm'r v. Bewley, Ky.1953, 264 S.W.2d 680, 51 A.L.R.2d 159.

Likewise, where there was an agreement for assignment during the lifetime of the registered owner the person equitably entitled to the proceeds was given them. In re Hendricksen's Estate, 1953, 156 Neb. 463, 56 N.W.2d 711.

An interesting Pennsylvania case holds that the administrator of the registered owner can be compelled to pay the proceeds of the bonds to one to whom the completed gift was made. In re Estate of Diskin, 1932, 105 Pa.Super. 519, 161 A. 893.[4] As pointed out in In re Janusiki's Estate, 1951, 80 Pa.Dist. & Co.R. 373, under the regulations if the donee of a bond registered in the name of the donor has possession he cannot cash it. Neither can the administrator of the registered owner cash it because he does not have possession. The procedure is to require the possessor to turn the documents over to the administrator to be cashed. He, in turn, holds the proceeds for the equitable owner.[5]

Likewise, a clearly written Florida decision sustained, as between the parties, an inter-vivos gift of savings bonds. Marshall v. Felker, 1945, 156 Fla. 476, 23 So.2d 555, 161 A.L.R. 167.

We think the distinction established in these state cases and others does not rest on fraud, although fraud was present in some of them.[6] The point is that with regard to payment by the issuer, the United States Government, the provisions of the contract including the regulations, govern. But the regulations do not apply to individual rights of persons who under the state law of property have become equitably entitled to the proceeds. The Nebraska court point-

established by valid judicial proceedings and payment or reissue will be made, upon presentation and surrender of the bond, except as follows:

"(a) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by the regulations in this part upon a surviving coowner or beneficiary.

"(b) A judgment creditor, a trustee in bankruptcy or a receiver of an insolvent's estate will have the right to payment (but not to reissue) and a judgment creditor will be limited to payment at the redemption value current thirty days after the termination of the judicial proceedings or current at the time the bond is received, whichever is smaller." 31 C.F.R. §§ 315.2, 315.11, 315.13 (1949)

(subsequent amendments in 31 C.F.R. §§ 315–16 (Supp.1958)). The authority for the above regulations is 49 Stat. 21 (1935), 31 U.S.C.A. § 757c (1954).

3. See Maryland Casualty Co. v. United States, 1920, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297; United States v. Dauphin Deposit Trust Co., D.C.M.D.Pa. 1943, 50 F.Supp. 73, 76.

4. Postal Savings certificates were involved in this case. We see no difference, however, since they were marked "nonnegotiable" and "nontransferable."

5. See also Union Nat. Bank v. Jessell, 1948, 358 Mo. 467, 215 S.W.2d 474.

6. See Henderson's Adm'r v. Bewley, Ky. 1953, 264 S.W.2d 680 and the extended annotation in 51 A.L.R.2d 163.

ed out that the primary purpose of the Treasury Department regulations is to prevent the Government from being involved in suits between claimants to Government bonds.[7] The nuisance which would be involved in interpleader suits between rival claimants in these comparatively small transactions is too obvious to require extended comment. In this connection we are helped by the discussion of the court in District of Columbia v. Wilson, 1954, 94 U.S.App. D.C. 399, 216 F.2d 630. That case involved an inheritance tax in the District of Columbia rather than federal estate tax but the property which was the subject of the litigation was United States bonds series G. The court pointed out that the regulations appeared primarily designed to protect the Treasury against adverse claimants. 216 F.2d at page 633. See also Moore v. Brodrick, D.C.D.Kan. 1954, 123 F.Supp. 108, 109.

The subject matter is one on which courts have differed in opinion. The various state cases on the point may be found in an annotation in 40 A.L.R.2d 788, annotating Connell v. Bauer, 1953, 240 Minn. 280, 61 N.W.2d 177.[8]

We think that the preferable view is the conclusion that as between the decedent's executor and the persons to whom the decedent made a gift, complete except for going through the process of having the bonds reissued, the right of the donees is clear. The transaction is equivalent to an express trust declared by the decedent even though trust terms were not used.

■ Does that relieve the estate of the decedent from an estate tax which includes the value of these bonds? The district judge points out that the regulation already cited "does not contain any intimation that the Treasury Department shall be considered as though it were one personality for borrowing money and a different one for collecting it by taxing." Of course that is true. Nevertheless, if the analysis above is correct, the decedent, prior to his death, was not equitably entitled to any of the proceeds of these bonds. Had he cashed the bonds, he and his representative after him would have been compelled to hold the proceeds in trust for the donees of his inter-vivos gift. In essence the decedent, prior to his death, had effectively conveyed his right of survivorship to the co-owners of the bonds. The Estate Tax attaches to the economic benefit to be derived from property rather than the technical ramifications of title.[9] The decedent had parted with his economic interest prior to his death, and in the words of the Internal Revenue Code

---

7. 56 N.W.2d at pages 711–712.

8. Some cases state that a purpose broader than the protection of the Government from competing claimants is to be attributed to the regulations. See e. g., Connell v. Bauer, 1953, 240 Minn. 280, 61 N.W.2d 177, 187; Moore's Adm'r v. Marshall, 1946, 302 Ky. 729, 196 S.W. 2d 369, 371, 168 A.L.R. 241; In re Owens' Estate, Surr.Ct.1941, 177 Misc. 1006, 32 N.Y.S.2d 747, 749. These cases suggest that one purpose of the regulations is to protect the interests of the bondholders of these "thrift" securities by preventing transfers. Search of committee reports and congressional debate throws no authoritative light on the question.

9. At the death of the decedent his executor could not receive payment of the bonds even if he then had possession of them. The regulations provide that "if either coowner dies without having presented and surrendered the bond for payment or authorized reissue, the surviving coowner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor." 31 C.F.R. § 315.-45(c) (1949). Prior to the death of the decedent either coowner could have obtained payment upon request, 31 C.F.R. § 315.45(a) (1949), and surrender, 31 C.F.R. § 315.22 (1949), of the bond. In this context, the position of the decedent after the gift of his right of survivorship was at best the same as if he had declared himself trustee of bonds registered solely in his own name. Yet the gross estate of a trustee does not include property over which he holds merely title but not the right to beneficial enjoyment. Reed v. Commissioner, 5 Cir., 1930, 36 F.2d 867. Lowndes and Kramer, Federal Estate and Gift Taxes 33 (1956),

of 1939, "the extent of the interest therein held" by the decedent was nothing. The taxing statute is not applicable.

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.